No. 25-3056

# In the United States Court of Appeals
## FOR THE TENTH CIRCUIT

CBW BANK, a Kansas State Chartered Bank,

*Plaintiff - Appellant*,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION;
JENNIFER WHANG, in her official capacity as an ALJ of OFIA;
C. SCOTT MARAVILLA, in his official capacity as an ALJ of OFIA,

*Defendants - Appellees*.

On Appeal from the U.S. District Court for the District of Kansas
No. 24-cv-2535 (Hon. Daniel D. Crabtree)

## BRIEF OF APPELLANT CBW BANK

ANTHONY J. DURONE
CARSON M. HINDERKS
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
(816) 561-7007

MICHAEL E. KENNEALLY
ALLEN H. DENSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

DANIEL B. TEHRANI
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6150

*Counsel for Plaintiff-Appellant CBW Bank*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF PRIOR OR RELATED APPEALS ............................ viii

GLOSSARY ............................................................................................ ix

INTRODUCTION ..................................................................................... 1

STATEMENT OF JURISDICTION ........................................................... 3

STATEMENT OF THE ISSUE ................................................................. 4

STATEMENT OF THE CASE ................................................................... 5

I.      Factual background............................................................................ 5

    A.      The FDIC's enforcement powers.............................................. 5

        1.      Civil monetary penalties................................................. 6

        2.      Administrative law judge hearings ............................... 8

    B.      The FDIC's proceedings against CBW .................................... 9

II.     Procedural background ................................................................... 10

    A.      CBW's district court action.................................................... 10

    B.      The district court's dismissal of the action........................... 15

SUMMARY OF THE ARGUMENT .......................................................... 19

STANDARD OF REVIEW........................................................................ 20

ARGUMENT ........................................................................................... 21

I.      Explicit preclusion of jurisdiction over constitutional claims
    must be clear. .................................................................................. 22

II.     Section 1818(i) does not clearly preclude jurisdiction over
    CBW's constitutional claims.......................................................... 30

    A.      Section   1818(i)   says   nothing   about   precluding
        constitutional claims, let alone structural challenges not
        meaningfully reviewable on appeal. ..................................... 30

# TABLE OF CONTENTS
## (continued)

**Page**

    B.   By its terms, Section 1818(i) bars court rulings that affect the issuance or enforcement of notices and orders under Section 1818, not challenges to the structure of agency proceedings................................................................. 36

    C.   The FDIC cannot explain how all of CBW's claims and requested relief would affect the issuance or enforcement of a notice or order under Section 1818........... 41

III.  The FDIC does not dispute that Section 1818 does not implicitly preclude jurisdiction over CBW's constitutional claims under *Axon*........................................................................ 44

CONCLUSION ....................................................................................... 45

ORAL ARGUMENT STATEMENT ......................................................... 46

CERTIFICATE OF COMPLIANCE......................................................... 47

ATTACHMENTS.................................................................................... 48

    Memorandum and Order, Filed March 3, 2025 (Dkt 35)

    Judgment, Filed March 3, 2025 (Dkt 36)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AT&T, Inc. v. FCC,*
135 F.4th 230 (5th Cir. 2025) ............................................................. 12

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023)............................................ 4, 17, 25-26, 28, 37, 44

*Bank of La. v. FDIC,*
919 F.3d 916 (5th Cir. 2019).............................................................. 25

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.,*
502 U.S. 32 (1991)................................................................... 32-33, 35

*Bonan v. FDIC,*
No. 23-cv-8, 2023 WL 156852 (E.D. Mo. Jan. 11, 2023)..................... 29

*Burgess v. FDIC,*
639 F. Supp. 3d 732 (N.D. Tex. 2022)................................................ 31

*Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.,*
28 F.4th 1051 (10th Cir. 2022) .......................................................... 45

*Citizens for Const. Integrity v. United States,*
57 F.4th 750 (10th Cir. 2023) ............................................ 23, 29-31, 35

*Cmty. Action of Laramie Cnty., Inc. v. Bowen,*
866 F.2d 347 (10th Cir. 1989)............................................................ 23

*Collins v. Dep't of the Treasury,*
83 F.4th 970 (5th Cir. 2023) ....................................................24-25, 31

*Colo. River Water Conservation Dist. v. United States,*
424 U.S. 800 (1976).......................................................................... 21

*Dairy Queen, Inc. v. Wood,*
369 U.S. 469 (1962).......................................................................... 28

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Demore v. Kim*,
538 U.S. 510 (2003)......................................................................22, 31

*Elgin v. Dep't of the Treasury*,
567 U.S. 1 (2012)...............................................................................25

*Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*,
864 F.3d 1105 (10th Cir. 2017)...........................................................20

*FDIC v. Bank of Coushatta*,
930 F.2d 1122 (5th Cir. 1991)............................................................24

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1999)...........................................................43

*Franklin v. Massachusetts*,
505 U.S. 788 (1992).............................................................................43

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010).......................................................13-14, 21, 41-42

*Frontier State Bank Okla. City v. FDIC*,
702 F.3d 588 (10th Cir. 2012).............................................................23

*Gaunt v. Ala. Bound Oil & Gas Co.*,
281 F. 653 (8th Cir. 1922)..................................................................37

*Henry v. Office of Thrift Supervision*,
43 F.3d 507 (10th Cir. 1994)..........................................................33-35

*In re Kaiser Steel Corp.*,
911 F.2d 380 (10th Cir. 1990)............................................................29

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022) ..............................................................14

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Johnson v. Robison,*
415 U.S. 361 (1974).................................................................. 31, 38-39

*Leachco, Inc. v. CPSC,*
103 F.4th 748 (10th Cir. 2024) .......................................................... 14

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
— U.S. —, 2025 WL 1716136 (2025) ................................................... 25

*McNary v. Haitian Refugee Ctr., Inc.,*
498 U.S. 479 (1991)............................................................................ 27

*Ponte v. FDIC,*
No. 23-cv-165, 2023 WL 6441976 (D.R.I. Oct. 3, 2023)..................... 37

*SEC v. Jarkesy,*
603 U.S. 109 (2024)........................................................... 11-12, 14, 27

*Seila L. LLC v. CFPB,*
591 U.S. 197 (2020).................................................................... 13, 41

*Shapiro v. McManus,*
577 U.S. 39 (2015)............................................................................. 21

*Smith v. Bd. of Governors of the Fed. Rsrv. Sys.,*
73 F.4th 815 (10th Cir. 2023) ...................................................... 18, 34

*Thunder Basin Coal Co. v. Reich,*
510 U.S. 200 (1994)............................................................... 25, 35, 44

*Trump v. Wilcox,*
145 S. Ct. 1415 (2025)....................................................................... 13

*United States v. Arthrex, Inc.,*
594 U.S. 1 (2021)............................................................................... 14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Ward v. Vill. of Monroeville,*
409 U.S. 57 (1972) ................................................................................ 28

*Webster v. Doe,*
486 U.S. 592 (1988) ...................................................... 22-25, 30-32, 35

**CONSTITUTIONAL PROVISIONS & STATUTES**

5 U.S.C. § 1202 ..................................................................................... 14

28 U.S.C. § 1291 ..................................................................................... 4

28 U.S.C. § 1331 ........................................................................... 3, 16, 21

Administrative Procedure Act
5 U.S.C. § 706 ........................................................................................ 43

Civil Service Reform Act of 1978
5 U.S.C. § 7521 ................................................................... 14-15, 18, 39

Federal Deposit Insurance Act of 1950
12 U.S.C. § 1818 ...................... 1, 3-7, 16-17, 19-25, 27-37, 39-41, 43-44
12 U.S.C. § 1831o ................................................................................. 16
12 U.S.C. § 1831p-1 ............................................................................. 16

Financial Institutions Supervisory Act of 1966, Pub. L. No. 89-695,
80 Stat. 1028 ........................................................................................ 16

International Lending Supervision Act of 1983
12 U.S.C. § 3907 ................................................................................... 23

Mandamus Act
28 U.S.C. § 1361 ................................................................................... 43

U.S. CONST.
amend. VII ......................................................................... 10-12, 27, 42
art. III ............................................................... 1, 10-12, 15, 27, 39, 42

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

### RULES & REGULATIONS

12 C.F.R.

§ 308.4 ................................................................................................... 42
§ 308.5 ............................................................................................. 8, 39
§ 308.35 ........................................................................................... 8, 39
§ 308.36 ................................................................................................ 39
§ 308.37 ................................................................................................ 39
§ 308.38 ........................................................................................... 8, 39
§ 308.39 ................................................................................................. 8
§ 308.40 ................................................................................................. 8
§ 308.103 ............................................................................................... 8

FED. R. APP. P. 4 ....................................................................................... 4

### OTHER AUTHORITIES

WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1939) .................... 37

## STATEMENT OF PRIOR OR RELATED APPEALS

CBW Bank's counsel are unaware of any prior or related appeals in this Court, although the Fifth Circuit may soon address a similar issue in *Burgess v. Whang*, No. 22-11172 (5th Cir.).

# GLOSSARY

ALJ     Administrative Law Judge

FDIC    Federal Deposit Insurance Corporation

OFIA    Office of Financial Institution Adjudication

## INTRODUCTION

Through this action, CBW Bank seeks judicial redress for a proceeding before the Federal Deposit Insurance Corporation ("FDIC") that violates CBW's rights in two separate ways. The FDIC accuses CBW of historically violating certain legal requirements and hopes to obtain over $20 million in civil penalties through an administrative proceeding. Thus, rather than pursue such a substantial penalty in an Article III court with the safeguard of trial by jury, the FDIC hopes to secure such relief from an administrative law judge ("ALJ") who is situated in the Executive branch but not subject to meaningful control or oversight by the head of that branch, the President.

Although CBW's constitutional claims are meritorious under Supreme Court precedent—and although the government conceded below that the ALJ removal restrictions are unconstitutional—the district court never reached the merits. Instead, it held that this entire action is precluded by 12 U.S.C. § 1818(i)(1) and that it therefore lacked statutory subject matter jurisdiction to proceed.

The Court should reverse and send the case back for the district court to address the merits. The district court's decision misconstrues

1

the governing precedent and statutory language. This Court and the Supreme Court have both been clear that statutes limiting courts' jurisdiction do not apply to constitutional claims unless it is crystal clear that they do. Courts must be particularly reluctant to read statutes as barring jurisdiction over constitutional claims when such a reading would foreclose adequate and meaningful judicial consideration of those claims. After all, a statute that precluded such review would itself raise serious constitutional concerns.

Here, the Supreme Court has already recognized that challenges to the structure of agency proceedings, like CBW's challenge, must be entertained before the agency proceedings conclude to provide the possibility of meaningful relief. But the district court decided that CBW must wait until the end of the agency proceedings to raise its challenge. Only the clearest statutory restriction on jurisdiction could produce that effect. The statutory language here does not. Without referring to constitutional challenges of any sort—let alone structural constitutional challenges that cannot obtain meaningful remedies after the agency proceedings are over—the statute in this case bars courts from providing relief affecting the *issuance* or *enforcement* of a notice or order that the FDIC

2

issues *under its statutory authority*. 12 U.S.C. § 1818(i)(1). The district court failed to explain how all of CBW's claims and requested relief would affect the issuance or enforcement of a notice or order under the FDIC's statutory authority—much less how that can be determined with certainty at this early, motion-to-dismiss stage of the litigation. CBW has not asked the district court to take action against any FDIC notice or order, nor has it asked the district court to pass judgment on the FDIC's interpretation or application of its substantive statutory authority under the governing banking laws. Rather, CBW asks for the district court's intervention to ensure CBW receives a constitutionally structured proceeding before it becomes too late for CBW to receive a proceeding that respects its constitutional rights. Congress did not eliminate the district court's ability to provide that relief, let alone with the requisite clarity. The district court erred in concluding otherwise, and this Court should reverse.

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because CBW claims that the FDIC's proceedings against it are structured in ways that violate the Constitution of the United States.

*See, e.g.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023). Contrary to the district court's ruling below, 12 U.S.C. § 1818(i) does not deprive the district court of jurisdiction over this action.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered a final decision dismissing this action in its entirety. The appeal is timely because the district court entered its judgment on March 3, 2025, and CBW filed its notice of appeal on March 31, 2025. App. at 74-76; FED. R. APP. P. 4(a)(1)(B).[1]

## STATEMENT OF THE ISSUE

Whether 12 U.S.C. § 1818(i), which states in relevant part that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [12 U.S.C. § 1818], or to review, modify, suspend, terminate, or set aside any such notice or order," evinces the clear congressional intent necessary to preclude jurisdiction over CBW's constitutional challenges to the structure of the FDIC's proceedings.

---

[1] The appendix citations in this brief refer to the relevant page of the Appellant's single-volume Appendix ("App.").

4

STATEMENT OF THE CASE

## I.   Factual background

Plaintiff CBW, formerly known as Citizens Bank of Weir, is a single-branch, Kansas state-chartered bank headquartered in Weir, Kansas.  App. at 14 (Compl. ¶ 33).  CBW was acquired by Suchitra Padmanabhan and her husband, Suresh Ramamurthi, during the 2008 global financial crisis.  *Id.* at 15 (Compl. ¶ 38).  Defendant Federal Deposit Insurance Corporation ("FDIC") has moved to assess a $20 million civil monetary penalty against CBW for alleged violations that supposedly happened years ago, through business operations that CBW shuttered in 2020.  *Id.* at 21-22 (Compl. ¶¶ 71-72); *id.* at 53.

### A.   The FDIC's enforcement powers

The FDIC is authorized by Congress to investigate banks and bankers and enforce a variety of federal banking laws.  App. at 16 (Compl. ¶ 46).  Under the Federal Deposit Insurance Act of 1950, as amended, the FDIC has significant enforcement power.  It may issue a "notice of charges" against an enforcement target, 12 U.S.C. § 1818(b)(1); may issue "cease-and-desist orders," 12 U.S.C. § 1818(b)-(c); may conduct hearings, 12 U.S.C. § 1818(h); may force banks to "correct conditions" resulting from violations of laws, 12 U.S.C. § 1818(b)(6); and, particularly relevant

here, may levy significant civil monetary penalties for violations of applicable laws and regulations, 12 U.S.C. § 1818(i)(2).

### 1.    Civil monetary penalties

The statute establishes three tiers of civil monetary penalties:

Under the first tier, the FDIC can issue "a civil monetary penalty of not more than $5,000 for each day" on any regulated financial institution that violates "any law or regulation," certain "final order or temporary order[s]" authorized under the statute, certain "condition[s] imposed in writing by a Federal banking agency," or a "written agreement between such depository institution and such agency."    12 U.S.C. § 1818(i)(2)(A).

Under the second tier, the FDIC can order "a civil penalty of not more than $25,000 for each day during which such . . . breach continues" when certain aggravating factors are present.  12 U.S.C. § 1818(i)(2)(B). In particular, when a regulated financial institution violates Section 1818(i)(2)(A), "recklessly engages in an unsafe or unsound practice in conducting the affairs of such insured depository institution," or "breaches any fiduciary duty," second-tier penalties are available if the violation (I) "is part of a pattern of misconduct," (II) "causes or is likely to

6

cause more than a minimal loss to such depository institution," or (III) "results in pecuniary gain or other benefit to such party." 12 U.S.C. § 1818(i)(2)(B).

The third tier permits imposition of the statute's maximum civil penalty when Section 1818(i)(2)(B)'s conditions are met, the institution acts "knowingly," and the institution "knowingly or recklessly causes a substantial loss to such depository institution or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach." 12 U.S.C. § 1818(i)(2)(C)(ii). For an "insured depository institution," the maximum third-tier penalty is "an amount not to exceed the lesser of . . . $1,000,000" or "1 percent of the total assets of such institution" per day. 12 U.S.C. § 1818(i)(2)(D)(ii).

For all three tiers, a penalty "may be assessed and collected by the appropriate Federal banking agency by written notice." 12 U.S.C. § 1818(i)(2)(E)(i). Unless the financial institution timely requests a hearing, "the assessment shall constitute a final and unappealable order." 12 U.S.C. § 1818(i)(2)(E)(ii). The request for an agency hearing must be made within 20 days of the issuance of the notice of assessment. 12 U.S.C. § 1818(i)(2)(H).

### 2.    Administrative law judge hearings

FDIC hearings are governed by agency regulations and take place before an administrative law judge ("ALJ") of the Office of Financial Institution Adjudication ("OFIA"). 12 C.F.R. §§ 308.5(a), 308.35, 308.103(a). The FDIC participates in an ALJ-sharing arrangement with three other banking agencies—the Office of Comptroller of the Currency, the Federal Reserve Board, and the National Credit Union Administration. App. at 19 (Compl. ¶¶ 59-61). The FDIC is the host agency for OFIA, which currently has two ALJs. *Id.* at 19-20 (Compl. ¶¶ 63, 65-66).

Once the hearing concludes, the ALJ prepares a "recommended decision" for presentation to the FDIC's Board. The recommended decision includes both recommended findings of fact and recommended conclusions of law, plus a proposed order. 12 C.F.R. §§ 308.5(b)(8), 308.38. Parties may file "exceptions" to the ALJ's recommended decision, findings, conclusions, proposed order, admission or exclusion of evidence, or failure to make a ruling proposed by the party. 12 C.F.R. § 308.39. The exceptions are filed with the FDIC's "Administrative Officer," who refers the matter to the FDIC's Board of Directors "for final decision." 12 C.F.R. § 308.40(a).

### B. The FDIC's proceedings against CBW

On November 19, 2024, the FDIC filed a notice of charges assessing a civil monetary penalty against CBW. App. at 21-22 (Compl. ¶¶ 71-72). This penalty relates to years-old alleged conduct that occurred in the bank's long-abandoned correspondent banking and money services businesses. *Id.*

Before the proposed assessment, the FDIC conducted regular examinations of CBW's Banking Secrecy Act and anti-money laundering compliance program. *Id.* at 21-22 (Compl. ¶ 72). Nevertheless, the FDIC uncovered no evidence that the bank or any of its employees engaged in deliberate misconduct or recklessly or willfully disregarded any anti-money laundering risk. *Id.* The bank has always operated in good faith, taking swift action to address the FDIC's concerns, including shuttering the correspondent banking and money services businesses in 2020. *Id.* Even so, the FDIC continues to pursue a monetary penalty in connection with alleged activity in 2019. *Id.* at 22 (Compl. ¶ 73). The penalty the FDIC seeks is unreasonable and indeed unprecedented for a bank of CBW's modest complexity, supervisory history, and size. Indeed, the

penalty is close to the entirety of the bank's capital.  There is no justification for any civil monetary penalty, let alone one of this magnitude, given the alleged conduct at issue in this case.  *Id.* (Compl. ¶ 74).

## II.  Procedural background

### A.  CBW's district court action

On November 19, 2024, the same day that the FDIC filed its notice of assessment, CBW filed this action asserting that the structure of the FDIC's administrative proceeding violated CBW's constitutional rights. App. at 8 (Compl. ¶ 1).  The complaint names as defendants the FDIC as an agency and the two individuals who, in their official capacity, serve as OFIA's two ALJs.  *Id.* at 14 (Compl. ¶¶ 34-37).  (Since this lawsuit's filing, Defendant Whang has been assigned to CBW's administrative proceeding.)  CBW asserts two claims targeting two structural flaws in the administrative proceeding.

*First*, CBW contends that the ALJ's adjudication of the civil monetary penalty assessment against CBW violates Article III and the Seventh Amendment of the U.S. Constitution.  *Id.* at 23-26 (Compl. ¶¶ 81-101).  The Supreme Court has held that Congress cannot "conjure away

the Seventh Amendment" or "siphon" traditional actions involving private rights "away from an Article III court" merely by enacting a new regulatory scheme and assigning initial adjudication of disputes under that scheme to an administrative agency. *SEC v. Jarkesy*, 603 U.S. 109, 135 (2024) (citation omitted).

In *Jarkesy*, the Supreme Court held for the first time that Congress had overstepped these bounds by authorizing adjudication by an administrative agency. There, a federal statute enabled the Securities and Exchange Commission to conduct juryless proceedings before an ALJ to impose civil monetary penalties for securities fraud. *See id.* at 116-17. The Court held that this monetary relief, being punitive in nature, was a legal remedy that traditionally would have been awarded only in courts of law (not courts of equity), and the underlying claim was analogous to common law fraud. *Id.* at 123-25. Given the nature of the remedy and the claim, the Seventh Amendment presumptively applied and entitled the target of the enforcement action to a jury. *Id.* at 120. The Court then held that the proceeding did not fall within the "public rights" doctrine, which is a limited exception to Article III that allows Congress to assign certain matters of public rights to non-Article III adjudicators. *Id.* Even though

11

the SEC was attempting to protect the public integrity of the securities markets through a newly fashioned regulatory scheme, actions targeting fraudulent conduct were by their nature actions that would have been brought in courts and thus implicated private rights. *Id.* at 138-39. Congress was powerless to withdraw such types of actions from judicial cognizance. *Id.* at 140.

Here, CBW contends that Congress committed a similar violation of Article III and the Seventh Amendment by empowering the FDIC and its ALJs to impose civil monetary penalties. Like the civil penalties in *Jarkesy*, the FDIC's civil monetary penalties are the type of remedy that is legal in nature because it is designed to punish and deter, and actions to recover such penalties have their precursor in common law actions in debt. App. at 24 (Compl. ¶¶ 87-88); *Jarkesy*, 603 U.S. at 122. And the public rights exception is also inapplicable here, because actions seeking to impose liability for allegedly reckless conduct or failure to take reasonable precautions are akin to traditional tort claims, not claims that historically could have been resolved outside courts. App. at 24-25 (Compl. ¶¶ 89-92); *see also AT&T, Inc. v. FCC*, 135 F.4th 230, 237-41 (5th Cir. 2025). On November 19, 2024, CBW moved for a preliminary injunction

12

on this claim.  App. at 4.  CBW was supported in the district court by a coalition of three organizations as amici curiae, the American Bankers Association, the Bank Policy Institute, and the National Bankers Association.  *See* App. at 5 (D. Ct. Dkt. 23).

*Second*, CBW contends that the ALJs are unconstitutionally insulated from presidential control because they are shielded from the President's oversight through multiple layers of for-cause removal protection. App. at 10-13, 26-29 (Compl. ¶¶11-28, 102-18).  "Because the Constitution vests the executive power in the President, he may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by [Supreme Court] precedents."  *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (citation omitted).

Although the Supreme Court has "held that Congress could provide tenure protections to certain inferior officers with narrowly defined duties," *Seila L. LLC v. CFPB*, 591 U.S. 197, 204 (2020) (emphasis omitted), it has never held that inferior officers may be insulated from presidential removal by "more than one level of good-cause tenure," *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 495 (2010).  In *Free Enterprise*, the Court held that two layers of for-cause limitations on the removal of members of the

13

Public Company Accounting Oversight Board were unconstitutional. *Id.* at 492. It did not decide whether the same reasoning would extend to ALJs. *Id.* at 507 n.10. Since then, however, one circuit has held that ALJs likewise cannot be shielded by multiple layers of for-cause removal protections. *Jarkesy v. SEC*, 34 F.4th 446, 463-65 (5th Cir. 2022), *aff'd on other grounds*, 603 U.S. 109 (2024).[2]

CBW alleges that the FDIC's two ALJs are similarly protected by multiple layers of for-cause removal protections. They may be removed "only for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a). And the Merit Systems Protection Board members enjoy their own "for cause" removal protection. *See* 5 U.S.C. § 1202(d). Not only that, any action to ask the Merit Systems Protection Board to permit removal would need to be approved by all four

---

[2]  In the context of holding that a plaintiff failed to establish irreparable injury to support a preliminary injunction, this Court has criticized the Fifth Circuit's analysis in *Jarkesy* for supposedly overlooking that the inferior officers in *Free Enterprise* "exercised executive functions" while ALJs "perform adjudicative functions." *Leachco, Inc. v. CPSC*, 103 F.4th 748, 764 (10th Cir. 2024). Respectfully, however, the *Leachco* Court overlooked Supreme Court precedent explaining that administrative judges "are still exercising executive power and must remain 'dependent upon the President'" even when their duties "partake of a Judiciary quality as well as Executive." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (citation omitted).

banking agencies that rely on OFIA.  App. at 11-12 (Compl. ¶¶ 19, 21).

Many of those decisionmakers have their own removal protections.  *Id.*

(Compl. ¶¶ 18, 22).  As a result, the FDIC's ALJs are effectively shielded

by not just two but *three* layers of removal protection.  *See id.* at 12

(Compl. ¶ 24).  On February 24, 2025, Defendants submitted a notice to

inform the district court that the Acting Solicitor General had deter-

mined on behalf of the government that the multiple layers of removal

restrictions for ALJs are unconstitutional and that the United States will

no longer defend the constitutionality of 5 U.S.C. § 7521, the provision

that limits the removal of agency ALJs to good cause established and de-

termined by the Merit Systems Protection Board.  App. at 54.

### B.    The district court's dismissal of the action

On March 3, 2025, the district court granted the government's mo-

tion to dismiss the action for lack of subject matter jurisdiction in its

Memorandum and Order ("Opinion" or "Op.").  App. at 73 (Op. at 18).  The

district court did not reach the merits of CBW's claims or request for a

preliminary injunction.  *Id.* at 58, 72-73 (Op. at 3, 17-18).

The district court did not question CBW's standing under Article III

of the U.S. Constitution, did not question whether the dispute was ripe,

and did not question that CBW asserted a federal claim for purposes of federal-question jurisdiction under 28 U.S.C. § 1331. Instead, the district court concluded that its jurisdiction was barred by 12 U.S.C. § 1818, which states in relevant part:

> The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section or under section 1831o or 1831p-1 of this title, and such courts shall have jurisdiction and power to order and require compliance herewith; but except as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i)(1).[3]

The court ostensibly construed this provision as eliminating any district court jurisdiction in any case involving FDIC proceedings, except

---

[3] In the 1966 Statutes at Large, the statutory language gives courts jurisdiction and power to order and require compliance "therewith." Financial Institutions Supervisory Act of 1966, Pub. L. No. 89-695, 80 Stat. 1028, 1034. It appears that in a later enactment or codification, "therewith" was mistakenly replaced by the word "herewith."

in two situations.  App. at 61-62 (Op. at 6-7).  First, the court observed, district courts have jurisdiction to restrain enforcement of temporary cease-and-desist orders under 12 U.S.C. § 1818(c)(2).  Second, district courts have jurisdiction over requests by the FDIC to enforce effective and outstanding FDIC notices and orders as described in 12 U.S.C. § 1818(i)(1) itself.  But aside from those exceptions, the court determined, "the court's jurisdiction is straightforward—it has none."  App. at 62 (Op. at 7).

The court rejected CBW's argument that its structural constitutional claims do not fall within the bar imposed by Section 1818(i)(1).  *Id.* at 63-72 (Op. at 8-17).  In doing so, the court rejected as irrelevant *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), on the ground that it did not construe a statute imposing an explicit jurisdictional bar.  And while the court acknowledged that another district court has held that Section 1818(i)(1) does not apply to structural constitutional claims like CBW's, it found a few other decisions reaching the contrary conclusion more persuasive.  *Id.* at 66-67, 70-72 (Op. at 11-12, 15-17).  The district court acknowledged that this Court "hasn't addressed jurisdiction and structural constitutional challenges under § 1818(i)(1) specifically."  *Id.*

17

at 68 (Op. at 13).  But it believed *Smith v. Board of Governors of the Federal Reserve System*, 73 F.4th 815 (10th Cir. 2023), furnished support for its holding.  App. at 68-70 (Op. at 13-15).

Since the district court's decision, the FDIC proceeding against the CBW has continued to move forward.  Even though Defendants (the FDIC and ALJ Whang) have said they will not press a "merits defense" of 5 U.S.C. § 7521, App. at 54, the unconstitutionality of that provision has not prevented defendants from continuing business as usual.  CBW moved to dismiss the ALJ proceeding based on its constitutional flaws, but the FDIC opposed dismissal and the ALJ denied it.  CBW's request for interlocutory review of that denial is pending before the FDIC Board.  But in the meantime, the ALJ has rejected multiple requests to stay the administrative proceedings to allow CBW's constitutional challenges to be fully aired, and those proceedings are about to enter a very costly phase of administrative discovery, which will impose considerable expenses on CBW in part because of the FDIC's collection of, and efforts to use, CBW's attorney-client privileged materials.

## SUMMARY OF THE ARGUMENT

The district court committed three fundamental errors in dismissing this action for lack of statutory subject matter jurisdiction.

First, the district court failed to apply the correct legal standard. As this Court and the Supreme Court have noted, statutes should not be construed to foreclose meaningful judicial review of constitutional claims unless that effect is clear. After all, denying a judicial forum to redress violations of constitutional rights would itself raise serious constitutional concerns. Here, even though CBW seeks to avoid a violation of its constitutional rights that cannot adequately be repaired by a court after the final agency decision, the district court held that CBW must await that final decision before attempting to secure judicial relief. In doing so, the district court improperly likened CBW's lawsuit to off-point cases involving nonconstitutional claims that, unlike CBW's claims can be fully vindicated after a final agency decision. Because the court applied the wrong legal standard, its decision cannot stand.

Second, the district court erred in holding that the language of 12 U.S.C. § 1818(i)(1) encompasses this action. That error is particularly apparent under the proper legal standard. But even apart from that

19

standard, the district court's interpretation is incorrect. The statute precludes jurisdiction to affect the issuance or enforcement of an FDIC notice or order under Section 1818. But CBW is not asking the district court to take any action against an FDIC notice or order or the issuance or enforcement of one. Nor is CBW asking the district court to second-guess the FDIC's understanding of its statutory authority under Section 1818. By its terms, Section 1818(i)(1) simply does not apply.

Third, even if some part of the relief sought in this action fell within Section 1818(i)(1), the district court failed to explain how the *entire* action would do so. At a minimum, the district court can grant declaratory relief that would provide a meaningful remedy to CBW without coming close to violating the terms of Section 1818(i)(1). For this reason and the others discussed below, the Court should reverse the dismissal of this action and remand for further proceedings.

## STANDARD OF REVIEW

The Court reviews the dismissal of an action for lack of jurisdiction de novo. *E.g.*, *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 864 F.3d 1105, 1109 (10th Cir. 2017).

## ARGUMENT

Congress has set forth a clear general rule that district courts have mandatory original jurisdiction over federal claims:  "The district courts *shall* have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331 (emphasis added); *cf. Shapiro v. McManus*, 577 U.S. 39, 43 (2015) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." (citation omitted)).  And the Supreme Court has often emphasized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *E.g.*, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Here, however, the district court committed multiple legal errors in overreading the language of Section 1818(i)(1) to bar it from performing any adjudication of, or awarding any potential relief for, CBW's two constitutional claims.[4]  The statutory language does not encompass this liti-

---

[4]  The Supreme Court has recognized that plaintiffs have an implied private right of action under federal law to seek equitable relief challenging governmental action that threatens federal constitutional rights or the separation of powers.  *See, e.g.*, *Free Enter. Fund. v. PCAOB*, 561 U.S. 477, 491 n.2 (2010).

21

gation—particularly under the standards that govern jurisdictional pre-

clusion of constitutional claims for which there is no adequate alternative

means of securing judicial review.

## I.   Explicit preclusion of jurisdiction over constitutional claims must be clear.

The district court's initial error was ignoring the standard that gov-

erns construction of a jurisdictional bar like that in 12 U.S.C. § 1818(i)(1).

As CBW noted below, the Supreme Court has held that jurisdictional

bars of this sort should not be construed to preclude review of constitu-

tional claims unless they do so clearly.  The Supreme Court has repeat-

edly instructed that "where Congress intends to preclude judicial review

of constitutional claims its intent to do so must be clear."  *Webster v. Doe*,

486 U.S. 592, 603 (1988); *accord Demore v. Kim*, 538 U.S. 510, 517 (2003).

The Court "require[s] this heightened showing in part to avoid the 'seri-

ous constitutional question' that would arise if a federal statute were con-

strued to deny any judicial forum for a colorable constitutional claim."

*Webster*, 486 U.S. at 603 (citation omitted).  Despite such Supreme Court

authority, the district court never applied this standard when it consid-

ered whether Section 1818(i)(1) bars CBW's constitutional claims.

This Court, too, has consistently affirmed this standard. It recently cited *Webster* and its progeny in explaining why "the federal courts are reluctant to cede their power to enforce the Constitution absent an unambiguous congressional command." *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 758 (10th Cir. 2023). That remains true even if a statute, "read literally, deprives this court of jurisdiction." *Id.* at 757. When Congress explicitly bars judicial review over certain categories of administrative determinations, "[j]udicial review of colorable constitutional claims remains available unless Congress has made its intent to preclude review crystal clear." *Id.* (quoting *Cmty. Action of Laramie Cnty., Inc. v. Bowen*, 866 F.2d 347, 352-53 (10th Cir. 1989)); *cf. Frontier State Bank Okla. City v. FDIC*, 702 F.3d 588, 597 n.10 (10th Cir. 2012) (citing *Webster* in the context of 12 U.S.C. § 3907).

As the district court noted, the Court has not specifically addressed jurisdiction over constitutional challenges under Section 1818(i)(1). App. at 68 (Op. at 13). But one circuit has addressed Section 1818(i)(1)'s implication for constitutional claims. And that circuit recognized that Section 1818(i)(1) does not speak with the requisite clarity to preclude judicial consideration of constitutional claims under *Webster*'s test.

23

In *FDIC v. Bank of Coushatta*, 930 F.2d 1122, 1126 (5th Cir. 1991), the court noted that, as a result of Section 1818(i), "the district court's jurisdiction is limited." Yet the court still entertained the bank's constitutional claim under the due process clause. *Id.* at 1129-32. The Fifth Circuit cited *Webster* to observe that "even if agency action is committed to its discretion by law, judicial review of constitutional claims is still available, unless congressional intent to preclude such review is clear." It did "not find such intent" in the statute. *Id.* at 1129-30. In that case, moreover, not even the FDIC argued that unreviewability extended to the issue of whether the bank had a "constitutional right to a full hearing on the record prior to issuance of a directive" by the agency. *Id.* at 1130 (citation omitted). The Fifth Circuit recently reaffirmed this interpretation of Section 1818(i)(1) and extended the same reasoning to a different, similarly worded statutory bar. *See Collins v. Dep't of the Treasury*, 83 F.4th 970, 980 (5th Cir. 2023) (recognizing that *Bank of Coushatta* found that Section 1818(i)'s "language did not preclude review of constitutional claims").[5]

---

[5] In *Collins*, the Fifth Circuit said that *Bank of Coushatta* did not bind later Fifth Circuit panels on this point because the FDIC had conceded the point. *Collins*, 83 F.4th at 980 n.7. But then to reach its holding

Although the district court never discussed how *Webster* applies in this case, Defendants contended below that *Webster* is inapplicable. Citing *Elgin v. Department of the Treasury*, 567 U.S. 1, 9-10 (2012), Defendants argued that *Webster* governs only when there would be a *complete* denial of judicial review. But that is not what *Elgin* says. In *Elgin*, the Court made clear that *Webster*'s applicability turns on whether the statute's scheme of review allows for the constitutional claim to be "meaningfully addressed." *Id.* at 9-10 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 & n.20 (1994)); *cf. McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, — U.S. —, 2025 WL 1716136, at \*7 n.4 (2025) (rejecting argument that "the presumption of judicial review does not apply unless a statute would preclude *all* judicial review" because "the presumption of judicial review applies to 'statutes that may limit *or* preclude review.'" (citation omitted)).

---

in *Collins* itself, the Fifth Circuit adopted *Bank of Coushatta*'s reading of Section 1818(i)(1) as persuasive and applied it to a very similarly worded statute. *Collins*, 83 F.4th at 980-81 & nn.7-8. The FDIC may prefer to highlight *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019). But the Fifth Circuit's opinion there made clear it was engaging in an "implicit preclusion analysis" that, without the benefit of *Axon*, considered the three factors that the Supreme Court articulated in *Thunder Basin*. *Id.* at 923, 925-30. *Collins* is the latest and most instructive Fifth Circuit opinion on the question now before this Court.

As CBW argued below, the Supreme Court has squarely held that constitutional challenges to the structure of administrative adjudications "cannot receive meaningful judicial review" if review is postponed until after an adverse final agency order. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190-92, 195 (2023). In *Axon*, as here, the plaintiff argued that "being subjected to unconstitutional agency authority" in the form of an "unconstitutionally insulated ALJ" inflicted "a here-and-now injury" that "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* at 191. A court of appeals cannot do anything at that point to remedy "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," because "[a] proceeding that has already happened cannot be undone." *Id.* Judicial review "come[s] too late to be meaningful." *Id.* So plaintiffs with structural claims "will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.* at 192.

The same is true here. Just like the plaintiff in *Axon*, CBW raises a claim challenging ALJs' multiple layers of removal protection, which unconstitutionally shield ALJs from presidential control and supervision.

*See supra* pp. 13-15. And ALJs are equally "illegitimate decisionmaker[s]" to resolve matters of private right implicating legal claims and remedies. *See supra* pp. 10-13. But the effect of the district court's decision is that CBW must surrender itself to the illegitimate proceeding in the hope of challenging the proceeding after it has run its course. Further, it is not clear CBW would *ever* be able to challenge the proceeding if it prevails before the FDIC on the merits.[6] But regardless of whether CBW wins or loses before the FDIC, such an interpretation of Section 1818(i)(1) would be "tantamount to a complete denial of judicial review" for at least part of CBW's claim. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496-97 (1991).

Of course, if the FDIC ultimately imposes a civil monetary penalty based on the ALJ proceeding, CBW may be able to appeal and argue that the penalty must be vacated because of the Seventh Amendment and Article III violations. *See SEC v. Jarkesy*, 603 U.S. 109, 119-20, 140-41

---

[6] To be sure, it is exceptionally hard for any bank to prevail before the FDIC in its in-house proceedings. Several banking organizations argued below as amici curiae that "[i]n the past quarter-century, not a single FDIC-regulated bank has successfully defended itself before an FDIC administrative law judge"; rather, "every bank that has tried has lost." D. Ct. Dkt. 23 at 4.

27

(2024) (citations omitted); App. at 69-70 (Op. at 14-15). That is far from certain, though, because appealing a final FDIC order does not automatically stay the agency's order. 12 U.S.C. § 1818(h)(3). There is a real possibility CBW would have to pay (or escrow) any penalty ordered by the FDIC, making it difficult, if not impossible, to continue to challenge the unconstitutional proceeding at that point.

But even if CBW gets a chance to appeal a final order, undoing the result of unconstitutionally structured proceedings would not fully restore CBW's rights. The Constitution guarantees constitutionally acceptable proceedings in the first instance. *Ward v. Vill. of Monroeville*, 409 U.S. 57, 61-62 (1972). As *Axon* notes, a constitutionally unacceptable proceeding cannot be undone after the fact. What's more, given the importance of the right to trial by jury, courts have long recognized in various contexts that post-final-judgment review is not sufficient to properly safeguard the right. Even before final judgment, federal courts have a responsibility "to grant mandamus where necessary to protect the constitutional right to trial by jury." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962). This well-established practice recognizes that denials of the right to trial by jury cannot be fully and adequately remedied through a

post-judgment appeal. *See In re Kaiser Steel Corp.*, 911 F.2d 380, 387-88 (10th Cir. 1990).[7]

Because CBW cannot adequately and meaningfully pursue its structural constitutional claims after the administrative proceeding, through appeal from a final decision, construing Section 1818(i)(1) to shut CBW out of court until then would, at a minimum, raise serious constitutional concerns. *See Citizens for Const. Integrity*, 57 F.4th at 758. Congress's language in Section 1818(i)(1) would need to have been "crystal clear" to reach the conclusion that the district court reached. *Id.* (citation omitted). As discussed next, Section 1818(i)(1)'s language comes nowhere close to clearing that high bar.

---

[7] One of the district court cases cited by the court below, *Bonan v. FDIC*, No. 23-cv-8, 2023 WL 156852, at *4 (E.D. Mo. Jan. 11, 2023), asserted with minimal analysis that the structural constitutional challenges in that case could be meaningfully and adequately remedied on appeal from a final adverse decision by the FDIC. For the reasons just explained, that conclusion does not withstand scrutiny.

**II.    Section 1818(i) does not clearly preclude jurisdiction over CBW's constitutional claims.**

**A.    Section 1818(i) says nothing about precluding constitutional claims, let alone structural challenges not meaningfully reviewable on appeal.**

The key statutory language states that "except as otherwise provided in this section . . . no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [this] section or to review, modify, suspend, terminate, or set aside any such notice or order."  12 U.S.C. § 1818(i)(1).  This general language is not enough under the *Webster* standard, as this Court and the Supreme Court have construed it, to prohibit effective review of a colorable constitutional claim.

As this Court recently summarized, under the *Webster* standard "[i]t is not enough just to bar judicial review in general."  *Citizens for Const. Integrity*, 57 F.4th at 758.  For instance, the Supreme Court has held that an immigration statute stating that "'[n]o court may set aside any action or decision by the Attorney General . . . regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole' did not bar [a] habeas corpus action challenging the constitutionality of legislation requiring [the] plaintiff's detention without bail."  *Id.*

30

(quoting *Demore*, 538 U.S. at 516-17). The Supreme Court has also held that a statute providing that decisions by the Administrator of Veterans Affairs "on any question of law or fact under any law . . . providing benefits for veterans . . . shall be final and conclusive," and further providing that "no . . . court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise," was insufficient to bar constitutional challenges by a conscientious objector. *Id.* at 758-59 (quoting *Johnson v. Robison*, 415 U.S. 361, 365 n.5, 366-74 (1974)).

Under the *Webster* standard, when a statute "does not include any explicit language barring judicial review of constitutional claims" relating to the statutory scheme, this Court "presume[s] that Congress did not intend to bar such review." *Id.* (citation omitted). Section 1818(i)(1) does not "explicitly preclude constitutional claims" and thus lacks the clear statement necessary to preclude such claims. *Collins*, 83 F.4th at 980 (citation omitted); *see also Burgess v. FDIC*, 639 F. Supp. 3d 732, 742 (N.D. Tex. 2022) (applying *Webster* to conclude that Section 1818(i)(1) does not contain the requisite clear statement needed to preclude jurisdiction over structural constitutional claims).

31

Rather than apply the *Webster* standard, the district court relied primarily on two cases that found *nonconstitutional* challenges barred by Section 1818(i)(1). These cases do not support the district court's dismissal of CBW's constitutional claims, which trigger *Webster*'s heightened standard.

First, in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 38 (1991), the Supreme Court described Section 1818 as establishing a "tripartite regime of judicial review." District courts may exercise review over certain temporary cease-and-desist orders. 12 U.S.C. § 1818(c)(2). District courts also may exercise review when the agency applies to them for enforcement of an effective or outstanding notice or order. 12 U.S.C. § 1818(i)(1). And appellate courts may exercise review of final Board orders. 12 U.S.C. § 1818(h).

In *MCorp*, the plaintiff invoked federal jurisdiction to block two Federal Reserve Board proceedings based on its having declared bankruptcy. 502 U.S. at 34. Without applying the *Webster* clear-statement rule that governs constitutional claims, the Court rejected the plaintiff's bankruptcy-specific theory for jurisdiction. *Id.* at 40. And the Court found Section 1818(i)(1)'s language sufficiently plain to bar the plaintiff's

nonconstitutional claims in part because barring those claims did not deprive the plaintiff of "a meaningful and adequate opportunity for judicial review" after a final agency decision. *Id.* at 43. As discussed above, the same cannot be said of CBW's challenge to the structure of the FDIC's administrative proceedings: unless CBW obtains judicial review before the conclusion of the ALJ proceedings, judicial review will be too late to be fully adequate and meaningful. *See supra* pp. 25-29. But the district court below ignored *MCorp*'s discussion of the adequacy of later judicial review. App. at 62 (Op. at 7).

The second case on which the district court placed significant weight was *Henry v. Office of Thrift Supervision*, 43 F.3d 507 (10th Cir. 1994). There, the plaintiff had consented to a cease-and-desist order and "effectively waived her right to contest the charges," on the belief that the agency would help her recapitalize or sell her company. *Id.* at 510. When that belief proved mistaken, she filed suit challenging the agency's claimed remedial authority and attempting to set aside the consent order. *Id.* at 510, 513. Like *MCorp*, but unlike this case, *Henry* seems not to have involved any claim that the agency's actions were unconstitutional. At most, the plaintiff argued that applying Section 1818(i)(1)

33

would create constitutional problems by denying her a forum. *Id.* at 513. But to avoid those problems, this Court determined that the plaintiff would have meaningful review in a future appeal to raise, as an affirmative defense, her argument that the consent order was procured through fraud and thus unenforceable. *Id.* at 514. Again, such reasoning cannot apply here, where under Supreme Court precedent, CBW cannot obtain full and effective review of its structural constitutional claims through an appeal from a final agency decision. *See supra* pp. 25-29.

The district court also relied to a lesser extent on *Smith v. Board of Governors of the Federal Reserve System*, 73 F.4th 815, 823 (10th Cir. 2023), which the court read as establishing this "Circuit's structure for raising structural constitutional claims." App. at 69 (Op. at 14). *Smith*, however, did not sweep so broadly. It merely held that certain litigants forfeited their constitutional challenge "by failing to raise it before the Board." 73 F.4th at 822. The Court then declined to excuse the forfeiture on grounds of futility. *Id.* That decision on issue preservation has no bearing on the scope of Section 1818(i)(1) or on whether an appeal from a final agency decision is an adequate substitute for district court jurisdiction.

34

The district court suggested that the availability of meaningful judicial review (one of the so-called *Thunder Basin* factors) is wholly irrelevant in this case. App. at 64-65 (Op. at 9-10). According to the district court, such considerations are relevant only where jurisdiction is precluded implicitly. Yet as the cases discussed above indicate, the district court was too quick to draw that conclusion. The Supreme Court and this Court considered the availability of meaningful judicial review under this very statutory scheme in both *MCorp* and *Henry*, neither of which involved implicit preclusion. And in cases involving constitutional claims, this consideration is especially important to avoid the serious constitutional questions that would be raised if a statute were construed to deny a judicial forum for a colorable constitutional claim. *See Webster*, 486 U.S. at 603; *Citizens for Constitutional Integrity*, 57 F.4th at 758. There is no reason to construe Section 1818(i)(1) as raising such a constitutional question here. As discussed next, its terms do not encompass CBW's claims.

**B.    By its terms, Section 1818(i) bars court rulings that affect the issuance or enforcement of notices and orders under Section 1818, not challenges to the structure of agency proceedings.**

Even if the lack of clear statement were somehow insufficient on its own, despite the preceding arguments and authorities, the district court's decision would still warrant reversal.  The court failed to explain how the actual wording of Section 1818(i)(1) applies to the particular claims CBW asserts.

As noted, the statute limits courts' jurisdiction "to affect by injunction or otherwise the issuance or enforcement of any notice or order under [this] section or to review, modify, suspend, terminate, or set aside any such notice or order."  12 U.S.C. § 1818(i)(1).  The second half of this quotation is inapplicable because there has been no notice or order by the FDIC that CBW asks the district court to review, modify, suspend, terminate, or set aside.  And the first half of the quotation is also inapplicable because CBW is not asking the district court to affect the issuance or enforcement of a notice or order under Section 1818.

First, CBW's claims do not require the district court to order relief affecting the issuance or enforcement of an FDIC order.  When the stat-

ute was enacted, as today, "the usual meaning of the word 'affect' or 'affecting,' as referred to an object, [was] to act upon, operate upon, or concern such object." *Gaunt v. Ala. Bound Oil & Gas Co.*, 281 F. 653, 656 (8th Cir. 1922); *see also* WEBSTER'S NEW INTERNATIONAL DICTIONARY 42 (2d ed. 1939) (defining to "affect" as "to act, or produce an effect, upon"). But CBW's lawsuit is not asking the district to act upon any FDIC notice or order—whether existing today or anticipated someday in the future. A structural constitutional challenge like this one "is not about that order," but is instead about the process that the agency employs to get there. *Axon*, 598 U.S. at 191. CBW "would have the same claim [if] it *won* before the agency." *Id.*

Without explaining how CBW's claims would affect an FDIC order (or notice), the district court moved the goalposts. It cited *Ponte v. FDIC*, for the idea that "Congress was . . . explicit that district courts are not to 'affect' FDIC enforcement proceedings." No. 23-cv-165, 2023 WL 6441976, at *2 (D.R.I. Oct. 3, 2023). But that is not the language Congress wrote. The statute limits judicial authority to affect *the issuance or enforcement of notices and decisions under Section 1818*, not FDIC enforcement proceedings as such.

37

Second, the Supreme Court's precedent on explicit jurisdictional bars explains that references to agency decisions "under" the laws that they administer do not encompass challenges based on the Constitution. For instance, in *Johnson*, the Supreme Court held that a constitutional challenge was not within a statutory bar prohibiting review of "*decisions* of the Administrator on any question of law or fact *under* any law administered by the Veterans' Administration providing benefits for veterans." 415 U.S. at 367 (citation omitted). The Court read this prohibition as "aimed at review only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans." *Id.* After all, "[a] decision of law or fact 'under' a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts." *Id.* In contrast, the "constitutional challenge" in *Johnson* was "not to any such decision of the *Administrator*, but rather to a decision of *Congress* to create a statutory class entitled to benefits that does not include . . . conscientious objectors who performed alternative civilian service." *Id.* Such questions of law arise under the Constitution, not under the statute whose constitutionality is challenged. *Id.*

Similarly, here, Section 1818(i) states that no court shall have jurisdiction "to affect . . . the issuance or enforcement of any notice or order *under* [Section 1818]." 12 U.S.C. § 1818(i)(1) (emphasis added). Thus, even if there were some FDIC notice or order whose issuance or enforcement CBW is attempting to affect, CBW still would not be attempting through this lawsuit to challenge any decision about the proper interpretation or application of Section 1818. Rather, for the removal-protection claim, CBW is challenging the statutory removal protection for ALJs, 5 U.S.C. § 7521, under the Constitution. And for the jury-trial claim, CBW is challenging the administrative procedures that the FDIC follows, 12 C.F.R. §§ 308.5, 308.35-38, also under the Constitution. At most, CBW is challenging the constitutionality of 12 U.S.C. § 1818(i)(2) to the extent that it purports to authorize the imposition of civil monetary penalties without providing the protections of an Article III court or trial by jury. But that too is a challenge to a decision of Congress, not a challenge to a decision by the administrative agency. *See Johnson*, 415 U.S. at 367.

The statutory context confirms that CBW's lawsuit is not attempting to affect the issuance or enforcement of a notice or order under Section 1818. The statute gives several examples of proceedings that would

39

affect the issuance or enforcement of a notice or order under that section, which are expressly excepted from the jurisdictional bar. Section 1818(i)(1)'s introductory proviso—"except as otherwise provided in this section . . . no court shall have jurisdiction to affect . . . "—necessarily acknowledges that other provisions in Section 1818 preserve jurisdiction in certain circumstances to affect the issuance or enforcement of notices or orders under the section. For instance, the FDIC may apply to a district court "for the enforcement of any effective and outstanding notice or order issued under [Section 1818]." 12 U.S.C. § 1818(i)(1). Any party to the administrative proceeding may obtain review of a final order by filing in the relevant court of appeals a "petition praying that the order of the agency be modified, terminated, or set aside." 12 U.S.C. § 1818(h)(2). Banks can also apply to a district court "for an injunction setting aside, limiting, or suspending the enforcement, operation, or effectiveness of [a temporary cease-and-desist] order pending the completion of the administrative proceedings." 12 U.S.C. § 1818(c)(2). Each of these examples contemplates asking a court to take action against the agency's order. But, again, CBW has not done anything of the sort here. The district court erred by assuming otherwise.

### C.    The FDIC cannot explain how all of CBW's claims and requested relief would affect the issuance or enforcement of a notice or order under Section 1818.

The district court concluded by asserting that "[a]ny relief the court might provide [CBW] would 'affect by injunction or otherwise the issuance or enforcement' of an FDIC notice." App. at 73 (Op. at 18). Even if the court were correct to think that *some relief* would run afoul of Section 1818(i)(1)'s jurisdictional bar, it still erred in dismissing the entire action because not *all* the requested relief would do so, as CBW explained below.

For example, it is impossible to understand how CBW's requested declaratory relief on its removal-protection claim would affect by injunction or otherwise any notice or order by the FDIC. When the Supreme Court finds a statute's removal protections unconstitutional, it often declares the statutory provision unconstitutional and severs the unconstitutional provision from the rest of the statute. *See, e.g.*, *Seila L. LLC v. CFPB*, 591 U.S. 197, 235 (2020). This type of declaration with severance can provide meaningful relief even when challengers "are not entitled to broad injunctive relief against the [agency's] operations." *Free Enter. Fund*, 561 U.S. at 513. Declaratory relief can "ensure that the [administrative] requirements and . . . standards to which [the challengers] are

41

subject will be enforced only by a constitutional agency accountable to the Executive." *Id.* Such accountability is important not only for the one subject to agency regulation, but also for the public more broadly. *Id.* at 497-98. If CBW's removal-protection claim succeeded and the district court found the unconstitutional provision severable, there would be no argument that declaring the provision unconstitutional would affect the FDIC's ability to issue or enforce any notices or orders. The ALJ would continue to perform the duties of her office without the unlawful removal protection. In fact, even without any ALJ at all, the FDIC's Board of Directors could always take charge because they have authority to perform "any act which could be done or ordered by the ALJ." 12 C.F.R. § 308.4.

Declaratory relief would similarly be meaningful relief for CBW's Article III and Seventh Amendment claim. Even without an injunction prohibiting the assessment of a civil monetary penalty, CBW would benefit from a declaration that a civil monetary penalty requires Article III and Seventh Amendment protections. Even when injunctive relief against the Executive branch is unavailable, constitutional injuries are often redressable through declaratory relief because the Executive

42

branch normally abides by a federal court's authoritative legal interpretation even if it is not directly bound by it through an injunction. *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992). If CBW prevails on this claim, then, there is a substantial likelihood that the FDIC will reconsider its current plan to use juryless administrative procedures to impose a civil monetary penalty even if the FDIC is not enjoined to do so.

The government may argue that declaratory relief is equally unavailable because the statutory bar extends to jurisdiction to affect by injunction "or otherwise." 12 U.S.C. § 1818(i)(1). But that residual provision most naturally applies to non-injunctive coercive remedies like writs of mandamus, which have historically been available in cases involving administrative agencies. For instance, the Administrative Procedure Act authorizes courts to issue writs of mandamus to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see, e.g.*, *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1188 (10th Cir. 1999). Another statute expressly gives district courts original mandamus jurisdiction to compel executive branch officials to perform a duty owed to the plaintiff. 28 U.S.C. § 1361.

And even if *some* declaratory relief might fall within Section 1818(i)(1) by affecting the issuance or enforcement of an order or notice under that section, the problem for Defendants remains:  in this case, declaratory relief would not do that.  Accordingly, the Court should reverse and remand for further proceedings even if the Court concludes that Section 1818(i)(1) bars some aspect of this litigation.

## III.   The FDIC does not dispute that Section 1818 does not implicitly preclude jurisdiction over CBW's constitutional claims under *Axon*.

For the reasons just discussed, the district court's conclusion that it lacked subject matter jurisdiction cannot stand.  As the district court stressed, that conclusion was based solely on the explicit terms of Section 1818(i)(1).  The court did not suggest, and the FDIC did not argue, that the appellate review mechanism in Section 1818(h)(2) implicitly precluded the district court's jurisdiction.  Nor would such an argument succeed.  As CBW explained in the briefing below, the implicit preclusion analysis under *Axon* is clear because the three *Thunder Basin* factors point in favor of the district court's jurisdiction.

Because the district court's jurisdictional ruling rests on legal error, the Court should remand the case for further proceedings.  Both sides

had filed separate requests for relief that the district court has yet to resolve on the merits, given its jurisdictional ruling. Because this Court is "a court of review, not first view," *Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 28 F.4th 1051, 1070 (10th Cir. 2022) (citation omitted), it should correct the district court's error and send the case back for the district court to resolve the outstanding issues.

## CONCLUSION

For all these reasons, the Court should reverse the judgment of the district court and remand the case for further proceedings.

Dated:  June 20, 2025

Respectfully submitted,

ANTHONY J. DURONE
CARSON M. HINDERKS
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
(816) 561-7007

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
ALLEN H. DENSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

DANIEL B. TEHRANI
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6150

*Counsel for CBW Bank*

45

## ORAL ARGUMENT STATEMENT

CBW respectfully requests oral argument. As the district court noted, this case presents a question of first impression for this Circuit, and district courts elsewhere have reached differing conclusions. Deciding whether federal courts have jurisdiction over the claims CBW raises will dictate whether parties in CBW's position have any meaningful opportunity for judicial review of claims asserting that agency proceedings are structured in ways that violate their constitutional rights under Supreme Court precedent. CBW submits that oral argument is appropriate given the novelty and importance of this question on appeal.


Dated:  June 20, 2025          s/ Michael E. Kenneally
                               MICHAEL E. KENNEALLY

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 8,980 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style require-ments of Federal Rule of Appellate Procedure 32(a)(6) because this docu-ment has been prepared in a proportionally spaced typeface using Mi-crosoft Word 365 in 14-point Century Schoolbook font.

Dated:  June 20, 2025          s/ Michael E. Kenneally
                                MICHAEL E. KENNEALLY

47

**ATTACHMENTS**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CBW BANK,

     Plaintiff,

v.

FDIC, et al.,

     Defendants.

Case No. 24-2535-DDC-BGS

## <u>MEMORANDUM AND ORDER</u>

Jury or ALJ?  That is the question plaintiff's preliminary injunction request poses for the court.  Plaintiff CBW Bank, Weir, Kansas, faces imminent administrative proceedings because it allegedly failed to comply with the Federal Deposit Insurance Corporation (FDIC)'s anti-money-laundering regulations.  The FDIC has issued a Notice of Assessment of Civil Money Penalty against plaintiff, to the tune of more than $20 million.  And plaintiff asks this court to intervene by preliminarily enjoining defendants' administrative proceeding.  Doc. 2.  Plaintiff's Complaint also seeks declaratory and permanent injunctive relief on its right to a jury and on ALJ removability.  Doc. 1 at 22–23 (Prayer for Relief ¶¶ 1–4).  Defendants—the FDIC and two Administrative Law Judges (ALJs)—oppose the preliminary injunction and move to dismiss. Doc. 13.

In its Motion for a Preliminary Injunction (Doc. 2), plaintiff challenges the FDIC's enforcement proceedings by asserting structural constitutional claims—not challenging the merits of the FDIC's penalty itself.  Doc. 2 at 15 ("CBW is challenging the power of the Board 'to proceed at all' when it offers no jury trial right or Article III decisionmaker.  CBW is not

challenging a specific damages award.").  Plaintiff contends the FDIC proceedings violate its

Seventh Amendment right to a jury trial.  *Id.* at 2.  Plaintiff premises its preliminary injunction

claim on *SEC v. Jarkesy*, a recent Supreme Court opinion invalidating in-house Securities and

Exchange Commission (SEC) enforcement proceedings as violating the Seventh Amendment

jury trial right.  603 U.S. 109 (2024).  *Jarkesy* held that SEC-imposed civil monetary penalties

are legal in nature.  *Id.* at 122–25.  And it concluded that SEC proceedings didn't fall under the

public rights exception.  *Id.* at 134–36.  Put those two together, plaintiff contends, and a jury—

not an ALJ in an administrative proceeding—must decide the case.  *Id.* at 140.  Plaintiff asks the

court to take *Jarkesy*'s logic, apply it to the FDIC, and enjoin the upcoming proceedings.  *See*

Doc. 2 at 3.  That way, plaintiff escapes irreparable harms allegedly incurred by the ALJ

proceeding itself:  deprivation of plaintiff's constitutional right to a jury as the fact-finder and

business or reputational injury flowing from the proceeding.  *Id.* at 3–4.  The court must act now,

plaintiff contends, because one can't unwind those harms once the FDIC proceeding takes

place—the familiar "one-can't-unscramble-eggs theory" of irreparable harm.  *Id.* at 4.

 Plaintiff also asks the court to issue a preliminary injunction premised on ALJ

removability—a request added in response to FDIC's Notice of Change in Position (Doc. 33).

Doc. 34 at 2 n.1.  Specifically, FDIC's Notice informed the court on February 24, 2025 "that the

United States will no longer defend" multiple layers of removal restrictions of administrative law

judges.  Doc. 33 at 1.  It explained that "the Acting Solicitor General has decided that the

multiple layers" don't "comport with the separation of powers and Article II."  *Id.*  In responding

to that Notice, plaintiff added Count II—about ALJ removability—to its preliminary injunction

request.  Doc. 34 at 2 n.1.

But the court can't do what plaintiff asks. It can't because it doesn't have subject matter jurisdiction over the claims pleaded in plaintiff's Complaint and, by extension, no jurisdiction over its injunction request. By statute, Congress explicitly has precluded district court jurisdiction over FDIC enforcement proceedings, except in specified circumstances—neither of which apply here.

The court explains its jurisdictional analysis, below. It begins with the background facts, followed by an overview of subject matter jurisdiction and the specific statutory provision precluding jurisdiction here, 12 U.S.C. § 1818(i)(1).

## I.    Background

The court draws the following background from plaintiff's Complaint (Doc. 1) and the FDIC's Notice of Assessment (Doc. 13-1).[1]

### *Notice of Charges*

Plaintiff is a single-branch, Kansas state-chartered bank headquartered in Weir, Kansas. Doc. 1 at 7 (Compl. ¶ 33). On November 19, 2024, the FDIC filed a Notice of Assessment of Civil Money Penalty against plaintiff. *Id.* at 14 (Compl. ¶ 71); Doc. 13-1 at 1 (Notice). That Notice assesses a monetary penalty for plaintiff's former conduct in its correspondent banking and money services businesses—businesses long-since abandoned by plaintiff. Doc. 1 at 14

---

[1]    The court properly can consider documents subject to judicial notice when deciding a motion to dismiss. So, though it falls outside the Complaint, the court properly can take judicial notice of the FDIC's Notice of Assessment, which has direct relation to matters at issue. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (concluding that district court did not err "in taking judicial notice of public records from the parties' administrative and judicial proceedings"). "However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023) (quotation cleaned up). The court thus judicially notices the FDIC's Notice of Assessment, styled *In re CBW Bank*, No. FDIC-22-0171k. Doc. 13-1.

(Compl. ¶ 71).  That is, the FDIC contends that plaintiff "failed to maintain an adequate Anti-

Money Laundering/Countering the Financing of Terrorism (AML/CFT) compliance program,"

violating various statutes and regulations.  Doc. 13-1 at 1.

More specifically, the FDIC alleges that plaintiff "provided banking to its mainly rural,

retail customer base from the Weir location, but generated the bulk of its earnings from fee-based

correspondent banking services for foreign financial institutions (FFIs)."  *Id.* at 3.  Plaintiff

allegedly provided international banking services to more than 30 FFIs in Central and South

America, Europe, Africa, and the Middle East.  *Id.*  For example, in 2018 plaintiff allegedly

processed more than $27 billion in wire transactions for FFIs, some of which sit in "high-risk

jurisdictions" such as Lebanon, Brazil, and Cyprus.  *Id.* at 8.  Plaintiff allegedly failed to monitor

that activity appropriately, including repeated failures to detect or report suspicious activity.  *Id.*

at 9.  Based on this and other alleged shortcomings, the FDIC assessed a $20,448,000 penalty

against plaintiff.  *Id.* at 21.

The FDIC issued the Notice to plaintiff after failed settlement negotiations where the

FDIC proposed a stipulation, but plaintiff refused to agree to it.  Doc. 1 at 15 (Compl. ¶ 77).

### *Upcoming FDIC Proceedings*

Plaintiff plans to request a hearing on the Notice.  *Id.* (Compl. ¶ 78).  The hearing will

occur before one of the two ALJs named as official capacity defendants here—either ALJ

Jennifer Whang or ALJ C. Scott Maravilla.  *Id.* (Compl. ¶ 79); *id.* at 1.  The hearing will begin

on an unspecified date set by the ALJ in Kansas City, Kansas (or another location set by the

ALJ).  Doc. 13-1 at 21.  The ALJ will conduct the hearing in public and in accordance with the

Administrative Procedure Act and other specified federal regulations.  *Id.*

*Plaintiff's Claims*

In this action, plaintiff brings two claims.  Initially, it confined its preliminary injunction request solely to the first claim, but later expanded the scope of the injunction request.  *See generally* Doc. 2; Doc. 34 at 2 n.1.  Plaintiff also seeks declaratory and permanent injunctive relief on both claims.

*First*, plaintiff contends that an ALJ's adjudication of legal claims without a jury trial violates the Seventh Amendment.  Doc. 1 at 18 (Compl. ¶ 93).  And it alleges that "simply being made to participate in the unconstitutional hearing causes [plaintiff] . . . harm" and irreparable harm, at that.  *Id.* at 18, 19 (Compl. ¶¶ 95, 98).  What's more, the civil monetary penalties, if imposed, "will consume substantial amounts of [plaintiff's] capital and harm its reputation."  *Id.* at 19 (Compl. ¶ 96).  So, plaintiff asks the court to intervene and grant injunctive and declaratory relief.  *Id.* (Compl. ¶ 100).  Specifically, plaintiff asks the court to enjoin preliminarily and permanently any FDIC proceeding against it that's adjudicated without a jury.  *Id.* at 22, 23 (Prayer for Relief ¶¶ 2, 4).  And plaintiff asks the court to declare that the FDIC proceedings deprive plaintiff of its constitutional jury trial right.  *Id.* at 22 (Prayer for Relief ¶ 1.c.).

*Second*, plaintiff alleges that the ALJs, who preside over the FDIC proceedings, enjoy protections from removal that violate Article II of the United States Constitution.  *Id.* at 20 (Compl. ¶ 106).  Plaintiff asserts having to undergo "proceedings before unconstitutionally insulated agency" officials "qualifies as a here-and-now injury" for which this court should grant declaratory relief.  *Id.* at 20, 21 (Compl. ¶ 108, 113) (quotation cleaned up).  Plaintiff thus asks the court to declare any provision restricting ALJ removal unconstitutional.  *Id.* at 22 (Prayer for Relief ¶ 1.a.).  Plaintiff also asks the court to enjoin permanently defendants "from implementing or carrying out the unconstitutional removal-protection provisions[.]"  *Id.* at 22 (Prayer for Relief ¶ 3).

## II.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction" (citation and internal quotation marks omitted)).

This case requires the court to determine the scope of its jurisdiction over FDIC enforcement actions. Congress limited the court's jurisdiction in the Federal Deposit Insurance Act, 12 U.S.C. § 1818. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider" including "when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). "Congress . . . may substitute for . . . district court authority an alternative scheme of review." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). Congress thus *implicitly* can substitute "by specifying a different method to resolve claims about agency action." *Id.* Or Congress *explicitly* can substitute "providing in so many words that district court jurisdiction will yield." *Id.* Congress chose the explicit route in 12 U.S.C. § 1818, as explained below.

## III.    12 U.S.C. § 1818

Title 12 U.S.C. § 1818 expressly provides for a "tripartite regime of judicial review[,]" involving both the appellate and district courts. *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 38 (1991). Specifically, the statute "authorizes court of appeals review of

final Board orders on the application of an aggrieved party." *Id.* (citing § 1818(h)).  A district

court may get involved in just two situations:  *First*, "within 10 days after service of a temporary

order," the district court may "restrain[] enforcement of the order pending completion of the

related administrative proceeding." *Id.* (citing § 1818(c)(2)).  *Second*, "the Board may apply to

district court for enforcement of any effective and outstanding notice or order." *Id.* (citing

§ 1818(i)(1)).

Outside those two specific situations, however, Congress explicitly precluded the court's

jurisdiction.  Section 1818 provides that "no court shall have jurisdiction to affect by injunction

or otherwise the issuance or enforcement of any notice or order under any such section, or to

review, modify, suspend, terminate, or set aside any such notice or order." § 1818(i)(1).  *MCorp*

opined about the "clarity of the congressional preclusion of review" in this statute.  502 U.S. at

43.  It described § 1818(i)(1)'s language as "plain" and "preclusive[,]" and emphasized that

"Congress has spoken clearly and directly" in this jurisdiction-stripping provision. *Id.* at 39, 44

(citing § 1818(i)(1)).  In other words, "the statute provides [the Supreme Court] with clear and

convincing evidence that Congress intended to deny the District Court jurisdiction to review and

enjoin the Board's ongoing administrative proceedings." *Id.* at 44.  The Tenth Circuit, too, has

recognized the clarity of Congress's directive, referring to § 1818(i)(1)'s strip of jurisdiction as a

"blanket prohibition[.]" *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994).

Under this Supreme Court and Tenth Circuit precedent, as outlined above, the scope of

this court's jurisdiction is straightforward—it has none.  Plaintiff's claims don't align with either

of the statutory exceptions permitting district court involvement.  *See* §§ 1818(c)(2), (i)(1).

Plaintiff doesn't bring a temporary order and ask the court to restrain its enforcement until after

the FDIC proceeding concludes.  § 1818(c)(2).  Nor has the Board applied to the court to enforce

an outstanding notice.  § 1818(i)(1).  Apart from these two situations, the statute, "clear[ly] and

convincing[ly,]" in blanket fashion, eliminates the court's jurisdiction.  The case is closed—at

this level, anyway.

But hold on a second, plaintiff responds.  Yes, neither of the statutory exceptions apply

here.  And yes, § 1818(i)(1) explicitly strips a district court of jurisdiction for substantive

challenges to FDIC enforcement proceedings.  But, plaintiff contends, that analysis changes

when a plaintiff presents a structural constitutional challenge.  Doc. 2 at 15–16.  Amici, the

American Bankers Association, the Bank Policy Institute, and the National Bankers Association,

agree with plaintiff.  Doc. 23 at 17–18.  Structural constitutional claims—they all assert—merit a

different analysis.  Doc. 2 at 15–16; Doc. 23 at 17–18.  The court takes up that argument, next.

## IV.    Structural Constitutional Challenges and an Explicit Jurisdictional Bar

Plaintiff and amici argue that the court's jurisdictional analysis should shift when it

comes to structural constitutional challenges.  Doc. 2 at 15–16; Doc. 23 at 17–18.  This general

principle rests on good authority.  In *Axon Enterprise, Inc. v. FTC*, the Supreme Court held that

structural constitutional challenges to SEC and FTC enforcement proceedings didn't fall within

the ambit of the relevant statutory review schemes.  598 U.S. 175.  The Court acknowledged that

"creation of such a review scheme for agency action divests district courts of their *ordinary*

jurisdiction over the covered cases."  *Id.* at 185 (emphasis added).  But, *Axon* clarified, "a

statutory review scheme of that kind does not necessarily extend to every claim concerning

agency action."  *Id.*  And so, the Court applied three factors—commonly referred to as the

*Thunder Basin* factors—to evaluate whether Congress intended to preclude district court

jurisdiction for structural constitutional claims.  *Id.* at 185–86.  It didn't, the Court concluded,

explaining that structural constitutional "claims are not of the type the statutory review schemes

reach." *Id.* at 196 (quotation cleaned up). And so, the Court determined, a "district court can therefore review them." *Id.*

Here's the problem. The statutory review schemes at issue in *Axon implicitly* precluded district court jurisdiction. That is, Congress enacted a "'comprehensive review process'"—but didn't adopt an explicit bar—which "ousted district courts of jurisdiction." *Id.* at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208, 212 (1994)). But that operative statute at issue here, 12 U.S.C. § 1818, is different.

Recall that when Congress *explicitly* precludes jurisdiction, it "provid[es] in so many words that district court jurisdiction will yield." *Id.* at 185. Recall, too, that § 1818(i)(1) specifies that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order[.]" Unlike the review schemes in *Axon*, Congress's words in § 1818(i)(1) explicitly foreclose district court jurisdiction. And that matters because it means this case doesn't fall under the *Axon* lines of cases. The explicit jurisdictional bar indicates this court needn't apply—indeed, it shouldn't apply—the *Thunder Basin* factors here.

When considering a different statute's explicit jurisdiction-stripping provision, the Ninth Circuit explained the role of the *Thunder Basin* factors in this fashion:

> Plaintiffs rely on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and its progeny, including *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023). In particular, Plaintiffs note that in *Axon*, the Court held that because the plaintiffs challenged the agency's "power to proceed at all, rather than actions taken in the agency proceedings," *id.* at 192, their case was not jurisdictionally barred, *id.* at 196. The *Thunder Basin* line of cases, however, is inapposite because those cases address only whether Congress has "implicitly" divested district courts of jurisdiction in a statutory scheme. *Axon*, 598 U.S. at 185. In this case, Congress explicitly divested courts of jurisdiction to hear the claims at issue. Accordingly, the district court correctly concluded that it lacked jurisdiction[.]

*Azimov v. U.S. Dep't of Homeland Sec.*, No. 22-56034, 2024 WL 687442, at *1 (9th Cir. Feb. 20, 2024) (addressing 8 U.S.C. § 1252(a)(2)(A)); *see also Bohon v. FERC*, 92 F.4th 1121, 1124

9

(D.C. Cir. 2024) ("But . . . today's case does not depend on statutory implications, *Thunder Basin*'s multi-factor test, or *Axon*'s application of those factors.  Instead, . . . Congress explicitly exercised its constitutional power to define the jurisdiction of federal courts.  Nothing in *Axon* requires us to ignore that text or allows us to displace it." (citations omitted)); *Perdue Farms Inc. v. Su*, No. 24-CV-477-BO-RJ, 2025 WL 338283, at *2 (E.D.N.C. Jan. 29, 2025) ("*Axon*, as well as *Thunder Basin* on which it relies, address *implicit* divestiture of jurisdiction in the district courts, and are inapposite where there is *explicit* divestiture." (emphasis added) (citations omitted)).

Also, refusing to apply *Axon* and the *Thunder Basin* factors here makes sense.  For this court to enjoin an FDIC enforcement proceeding—even with the laudatory goal of addressing structural constitutional claims—would contravene Congress's jurisdictional bar directly.  That is, any action by this court necessarily would "affect by injunction or otherwise" the FDIC's pending notice to plaintiff.  § 1818(i)(1).  And Congress forbade such involvement, explicitly mandating that "no court shall have jurisdiction" to "affect" a notice.  *Id.*  Such head-on exclusion differs meaningfully from an implicit jurisdiction-stripping statute, where the court must discern Congress's likely intent.  Here, there's no need to guess about Congress's intention.  Congress stated its intention plainly.  So the court must abide by it.

Justice Gorsuch, in his *Axon* concurrence, identified § 1818(i)(1) as a specific example of explicit preclusion.  *See* 598 U.S. at 208 (describing 12 U.S.C. § 1818(i)(1) as a situation where Congress "simply tells" federal courts that it's stripping them of jurisdiction instead of requiring the courts to "guess at the implicit intentions of legislators past").  Other courts to address § 1818(i)(1) have concluded the same, as explained next.

10

A.      **Weight of Authority**

Other district courts have addressed the precise issue now presented to our court:

whether a structural constitutional claim alters Congress's explicit strip of district court

jurisdiction.  Some took up this issue in the specific context of 12 U.S.C. § 1818(i)(1).  Others

addressed it when considering identical jurisdiction-stripping provisions housed in other statutes.

The bulk of those cases reach the same result:  A structural constitutional claim *does not* shift a

court's jurisdictional analysis when Congress's preclusion is explicit.  The court reviews some of

those cases, below.

1.      ***Bonan v. FDIC***

Begin with *Bonan v. FDIC*, No. 23-cv-8-HEA, 2023 WL 156852 (E.D. Mo. Jan. 11,

2023).  There, the court dismissed a case with a procedural posture and structural constitutional

arguments remarkably similar to the case at hand.  *Id.*  Frank William Bonan II was awaiting an

FDIC enforcement proceeding before ALJ Whang—a proceeding by which the FDIC sought to

impose a civil money penalty, among other enforcement actions.  *Id.* at *1.  Bonan moved for a

temporary restraining order and preliminary injunction.  *Id.* at *2.  He alleged that the FDIC

action against him violated his Seventh Amendment jury trial right, and also asserted that "the

structure of the FDIC board of directors and the tenure protections afforded to the FDIC ALJs is

unconstitutional."  *Id.* at *1.  He also argued that "Section 1818(i)(1) d[id] not divest [the court]

of jurisdiction to hear structural constitutional claims that are exogenous to the enforcement

proceeding."  *Id.* at *3.  A Missouri federal court disagreed.

*Bonan* concluded that "12 U.S.C. § 1818(i)(1) explicitly divests this Court of jurisdiction

to grant the injunctive and declaratory relief sought."  *Id.* at *4.  And it clarified that "FDIC

Enforcement proceeding respondents . . . who wish to raise constitutional challenges must raise

them with the Court of Appeals[.]"  *Id.*  In other words, Congress's explicit jurisdictional bar

precluded district court jurisdiction—even over structural constitutional claims.

In the wake of *Axon*, another district court reached the same explicit bar conclusion.

### 2.    *Ponte v. FDIC*

In *Ponte v. FDIC*, John C. Ponte brought structural constitutional claims in district court

against the FDIC.  No. 23-cv-00165-MSM-LDA, 2023 WL 6441976, at *1 (D.R.I. Oct. 3, 2023).

He alleged "that (1) the FDIC is unconstitutionally structured because the President cannot

remove a majority of its Board; (2) the administrative law judges used by the FDIC are

unconstitutionally shielded from removal; and (3) the FDIC enforcement proceeding deprived

him of his Seventh Amendment right to a jury trial."  *Id.* at *1 n.1.  And, he contended, *Axon*

should shift the court's jurisdictional analysis.  *Id.* at *1.  The district court wasn't persuaded.

*Ponte* identified § 1818(i)(1) as an explicit jurisdictional bar and explained "that district

courts are not to 'affect' FDIC enforcement proceedings."  *Id.* at *2.  And so, the court declined

to consult "the *Thunder Basin* factors to discern congressional intent—that intent is clear."  *Id.*

*Ponte* concluded, as *Bonan* had before it, that "§ 1818(i)(1) precludes this Court's jurisdiction

over Mr. Ponte's claims, constitutional or otherwise.  Instead, those claims must be raised in the

administrative process and, per § 1818(h)(2), may be reviewed by the appropriate court of

appeals."  *Id.*  Accordingly, *Ponte* granted the FDIC's Motion to Dismiss under Rule 12(b)(1).

*Id.*

### 3.    Similarly Worded Provisions of Preclusion

Finally, similarly worded jurisdiction-stripping provisions—housed in other statutes—

have produced similar explicit preclusion results.  For example, in *Moats v. Nat'l Credit Union

Admin. Bd.*, Jeffrey Moats brought constitutional claims in federal district court against the

National Credit Union Administration (NCUA).  No. 23-cv-147, 2024 WL 1724271, at *1 (S.D.

Tex. Apr. 9, 2024).  Moats alleged, among other things, that NCUA ALJ removal protections are unconstitutional and that NCUA proceedings violate his Seventh Amendment jury trial right.  *Id.* The district court held that Congress had precluded its jurisdiction explicitly based on the text of the preclusion statute.  *Id.* at *2–*3.  That statute read—and this should sound familiar—"'no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order . . . or to review, modify, suspend, terminate, or set aside any such notice or order.'"  *Id.* at *2 (quoting 12 U.S.C. § 1786(k)(1)).  Section 1786(k)(1)'s preclusion language is identical to that in § 1818(i)(1).  *Moats* concluded that "the markedly expansive language of § 1786(k) alone is sufficient to establish the required intent to preclude constitutional claims." *Id.* at *3.  And it deemed § 1786(k) "an explicit bar to all of Moats's claims, constitutional or otherwise."  *Id.* at *4.  The court, therefore, granted NCUA's Motion to Dismiss because the court lacked subject-matter jurisdiction over the case.  *Id.*

### 4. Summary

To recap:  three cases addressing preclusion language identical to the language at issue here produced three identical results.  The weight of this authority thus favors barring our court's jurisdiction.  And the court predicts the Tenth Circuit would so conclude, as well, for reasons it outlines, next.

### B. Tenth Circuit

The Tenth Circuit hasn't addressed jurisdiction and structural constitutional challenges under § 1818(i)(1) specifically.  But one recent Tenth Circuit case proves instructive in predicting how our Circuit would rule here, *Smith v. Bd. of Governors of Fed. Rsrv. Sys.*, 73 F.4th 815 (10th Cir. 2023).  There, the Tenth Circuit outlined how a party caught up in an allegedly unconstitutional FDIC enforcement proceeding may present a structural constitutional challenge.

In *Smith*, petitioners challenged, among other things, the validity of the ALJs, arguing that their appointments violated the Appointments Clause. *Id.* at 820; *see also* U.S. Const. Art. II, § 2, cl. 2. The Tenth Circuit declined to consider this structural challenge because petitioners didn't raise it before the ALJ or the Board below. *Smith*, 73 F.4th at 823. Nonetheless, our Circuit clarified what petitioners *could have done* to secure review of their structural constitutional challenge—they could have appealed to the Board of Governors. *Id.* The Circuit also noted that "futility did not deter Petitioners from making other collateral attacks on the proceeding by, for example, filing a motion requesting the ALJ dismiss the enforcement action." *Id.* (quotation cleaned up).

The Circuit thus contemplated that a party could present collateral attacks on FDIC enforcement actions—including structural constitutional attacks—in the context of the administrative proceeding, then on appeal to the Board, and, finally, on review by the Circuit. *Id.* This approach aligns with Congress delegating jurisdiction to the appellate courts. *See* § 1818(h)(1)–(2) ("Judicial review . . . shall be exclusively as provided in this subsection . . . . Any party . . . may obtain a review of any order . . . by the filing in the court of appeals of the United States . . . a written petition praying that the order of the agency be modified, terminated, or set aside."). And its faithful to Congress's explicit directive to preclude the district court from interfering or otherwise affecting the FDIC proceedings. *See* § 1818(i)(1) ("[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice[.]").

Our Circuit's structure for raising structural constitutional claims also answers plaintiff and amici's argument that the jurisdictional bar asserted here denies it review completely. Doc. 17 at 6; Doc. 23 at 18–22. To be sure, the structure delays review until the appellate level; but it

doesn't deny review. Consider *Jarkesy*, for example. 603 U.S. 109. Plaintiffs there petitioned for judicial review at the Fifth Circuit after the SEC final order had levied penalties against them. *Id.* at 119. The Fifth Circuit held, and the Supreme Court later affirmed, that a jury's absence in the SEC proceedings violated the Seventh Amendment. *Id.* at 119–20, 141. Plaintiff here likewise can appeal to the Board and then petition the Court of Appeals for review of its structural constitutional claims. The court thus predicts that the Tenth Circuit would conclude that § 1818(i)(1) divests this district court of its jurisdiction here.

Plaintiff, naturally, tries to avoid this result. It pins its hopes on *Burgess v. FDIC*, a recent opinion from the Northern District of Texas. 639 F. Supp. 3d 732 (N.D. Tex. 2022); *see generally* Doc. 2. Amici likewise point in *Burgess*'s direction. Doc. 23 at 17–18 Below, the court briefly addresses *Burgess*—and why plaintiff can't invoke it here.

### C.  *Burgess v. FDIC*

In *Burgess*, the district court enjoined an FDIC proceeding after deciding that § 1818(i)(1) doesn't bar the district court's subject matter jurisdiction *over structural constitutional claims*. 639 F. Supp. 3d at 742. *Burgess* first concluded that § 1818(i)'s *explicit* bar to district court jurisdiction doesn't encompass structural constitutional claims. *Id. Burgess* explained that § 1818(i) "makes no mention of constitutional claims, and thereby, any intent of Congress to strip the district court's jurisdiction over constitutional claims was not made clear." *Id.* Then, *Burgess* considered whether § 1818(i)(1) *implicitly* bars a district court from hearing structural constitutional claims by consulting the Supreme Court's *Thunder Basin* factors. *Id.* at 743. And it found wiggle room in that implicit analysis to exercise district court jurisdiction. It then enjoined the FDIC proceedings. *Id.* at 743–45, 750.

But *Burgess*'s choice to engage in an implicit preclusion analysis—instead of acknowledging § 1818(i)(1)'s explicit preclusion—isn't persuasive to this court. To chart an

implicit preclusion course, *Burgess* leaned hard into a Fifth Circuit opinion—*Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019). *Bank of Louisiana*, too, had conducted an implicit preclusion analysis under § 1818(i)(1). *Id.* at 923–30. But *Bank of Louisiana* clarified that the district court's approach—and not any independent conclusion about the propriety of implicit preclusion under § 1818(i)(1)—drove its analysis. *Id.* at 923 (explaining that the "parties and the district court addressed the question presented under the implicit preclusion analysis, and we therefore do the same"). And later, *Bank of Louisiana* explicated, more fulsomely, its implicit preclusion choice:

> [S]o robust is the section 1818(i)(1) bar that, on appeal, the FDIC invites us to stop there and decline to analyze the three *Thunder Basin* factors. It is a tempting offer. . . . Despite the attractiveness of this argument, we think it prudent to cycle through the *Thunder Basin* factors, as did the district court. Those factors *reinforce* the conclusion that the review scheme precludes district court jurisdiction over the Bank's claims.

*Id.* at 924–25 (emphasis added). In short, *Bank of Louisiana* simply applied an implicit preclusion analysis to *reinforce* its explicit preclusion conclusion, and so the Fifth Circuit consulted implicit preclusion (as had the district court).

Two years later, the Fifth Circuit, en banc, expressly identified § 1818(i)(1)'s preclusion as explicit. *Cochran v. SEC*, 20 F.4th 194, 204 (5th Cir. 2021) (en banc) (distinguishing explicit preclusion in § 1818(i)(1), as addressed in *Bank of Louisiana*, from possible preclusion in 15 U.S.C. § 78y). When it did so, *Cochran* clarified its earlier holding in *Bank of Louisiana*. It explained that *Bank of Louisiana* had held "that district court jurisdiction was *explicitly* divested" by "'the plain terms of section 1818(i)[.]'" *Id.* (emphasis in original) (quoting *Bank of Louisiana*, 919 F.3d at 924). In short, *Cochran* back-peddled, distancing § 1818(i)(1) from an implicit preclusion analysis. The Fifth Circuit decided *Cochran* in 2021, while the Northern District of Texas decided *Burgess* in 2022. So, in this court's view, *Burgess*'s reliance on

implicit preclusion (and the *Thunder Basin* factors) in the context of § 1818(i)(1)'s explicit bar was misplaced.

In sum, plaintiff's use of *Burgess* doesn't help with its problem. Defendants contend that *Burgess* was an outlier that "was incorrectly decided[.]" Doc. 13 at 12. Congress precluded jurisdiction explicitly in § 1818(i)(1), not implicitly. So, the court agrees that how a structural constitutional claim fares under *Thunder Basin*'s implicit preclusion factors is of no moment here. And this court declines to apply them. Plaintiff thus hasn't shouldered its burden to prove federal jurisdiction exists here. *See Siloam Springs*, 906 F.3d at 931 ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." (citation and internal quotation marks omitted)).

Here's the bottom line. "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *see* U.S. Const. art. III. § 1 (vesting the judicial power "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish"). "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act *ultra vires*." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). Succinctly, "when it comes to jurisdiction, the Congress giveth and the Congress taketh away." *In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015) (citing *Estep v. United States*, 327 U.S. 114, 120 (1946)). Congress took away district court jurisdiction in § 1818(i)(1). This court can't—and won't—snatch it back.

V.    **Conclusion**

The court doesn't opine whether *Jarkesy* requires a jury trial for FDIC proceedings. Nor does the court express a view whether ALJ removability presents constitutional issues for the FDIC's enforcement actions. The court passes on these issues because this case suffers from an

incurable jurisdictional defect.  So, those questions aren't ones that this court properly can decide.

Any relief the court might provide plaintiff necessarily would "affect by injunction or otherwise the issuance or enforcement" of an FDIC notice.  § 1818(i)(1).  And Congress explicitly stripped the court's jurisdiction to "affect" the issuance or enforcement of such a notice.  *Id.*  The court thus dismisses plaintiff's Complaint and its Motion for Preliminary Injunction because it lacks subject matter jurisdiction over them, as required under 12 U.S.C. § 1818(i)(1).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff CBW Bank's Motion for Preliminary Injunction (Doc. 2) is dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Dismiss (Doc. 13) is granted under Fed. R. Civ. P. 12(b)(1).  The case is dismissed without prejudice, and the Clerk of the Court must close the case.

**IT IS SO ORDERED.**

**Dated this 3rd day of March, 2025, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

# United States District Court

------------------------- DISTRICT OF KANSAS----------------------------

CBW BANK,

                Plaintiff,

v.                                      **Case No. 24-2535-DDC-BGS**

**FEDERAL DEPOSIT INSURANCE
CORPORATION,
JENNIFER WHANG,
C. SCOTT MARAVILLA,**

                **Defendants.**

## JUDGMENT IN A CIVIL CASE

☐    Jury Verdict.   This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒    Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

**Plaintiff shall take nothing and this action is dismissed consistent with the Memorandum and Order (Doc. 35) filed on March 3, 2025.**

    __03/03/2025__
        Date

                                   SKYLER B. O'HARA
                                   CLERK OF THE DISTRICT COURT

                                   by: __s/ Megan Garrett__
                                        Deputy Clerk