# No. 25-3056

# In the United States Court of Appeals
## FOR THE TENTH CIRCUIT

CBW BANK, a Kansas State Chartered Bank,

*Plaintiff - Appellant*,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION;
JENNIFER WHANG, in her official capacity as an ALJ of OFIA;
C. SCOTT MARAVILLA, in his official capacity as an ALJ of OFIA,

*Defendants - Appellees*.

On Appeal from the U.S. District Court for the District of Kansas
No. 24-cv-2535 (Hon. Daniel D. Crabtree)

## REPLY BRIEF OF APPELLANT CBW BANK

ANTHONY J. DURONE
CARSON M. HINDERKS
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
(816) 561-7007

MICHAEL E. KENNEALLY
ALLEN H. DENSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

DANIEL B. TEHRANI
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6150

*Counsel for Plaintiff-Appellant CBW Bank*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 4

I.     The FDIC's arguments contravene binding precedent on the preclusion of constitutional claims. ................................................. 4

II.    The FDIC's arguments contravene binding precedent on whether delayed judicial review of these claims would be meaningful review. ........................................................................ 13

III.   Even under the FDIC's preferred test for preclusion, at least part of CBW's complaint should proceed. ...................................... 18

CONCLUSION ....................................................................................... 24

CERTIFICATE OF COMPLIANCE ......................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abercrombie v. Off. of Comptroller of Currency*,
833 F.2d 672 (7th Cir. 1987) ............................................................... 10

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ................................................................... 2, 13-18

*Azimov v. U.S. Dep't of Homeland Sec.*,
No. 22-56034, 2024 WL 687442 (9th Cir. Feb. 20, 2024) ................... 16

*Bank of La. v. FDIC*,
919 F.3d 916 (5th Cir. 2019) ......................................................... 10-11

*Bartlett Mem'l Med. Ctr., Inc. v. Thompson*,
347 F.3d 828 (10th Cir. 2003) ............................................................. 7

*Bd. of Governors of Fed. Rsrv. Sys. v. DLG Fin. Corp.*,
29 F.3d 993 (5th Cir. 1994) ................................................................ 10

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) ............................................................................. 10

*Bohon v. FERC*,
92 F.4th 1121 (D.C. Cir. 2024) ........................................................... 16

*Bowen v. Mich. Acad. of Fam. Physicians*,
476 U.S. 667 (1986) ................................................................. 5, 7, 10

*Burgess v. Whang*,
— F.4th —, 2025 WL 2437490 (5th Cir. 2025) ....................... 11-13, 23

*Citizens for Const. Integrity v. United States*,
57 F.4th 750 (10th Cir. 2023) ........................................... 1, 4-5, 10, 18

*Collins v. Dep't of the Treasury*,
83 F.4th 970 (5th Cir. 2023) ............................................................. 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Collins v. Yellen*,
594 U.S. 220 (2021)........................................................................ 4, 20

*Cordoba v. Massanari*,
256 F.3d 1044 (10th Cir. 2001)............................................................8

*Demore v. Kim*,
538 U.S. 510 (2003)............................................................................5

*Elgin v. Dep't of the Treasury*,
567 U.S. 1 (2012)...................................................................8-9, 12-13

*FDIC v. Bank of Coushatta*,
930 F.2d 1122 (5th Cir. 1991)............................................................ 12

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010)....................................................................... 3, 21

*Great Lakes Dredge & Dock Co. v. Huffman*,
319 U.S. 293 (1943)........................................................................... 23

*Greenberg v. Comptroller of the Currency*,
938 F.2d 8 (2d Cir. 1991) ................................................................... 10

*Guerrero-Lasprilla v. Barr*,
589 U.S. 221 (2020)........................................................... 2, 7, 12, 16

*Henry v. Off. of Thrift Supervision*,
43 F.3d 507 (10th Cir. 1994).............................................................. 10

*Hill v. Kemp*,
478 F.3d 1236 (10th Cir. 2007).......................................................... 11

*Hindes v. FDIC*,
137 F.3d 148 (3d Cir. 1998) ............................................................... 10

# TABLE OF AUTHORITIES
# (continued)

**Page(s)**

*INS v. St. Cyr*,
  533 U.S. 289 (2001).............................................................................5

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ............................................................. 14

*Johnson v. Robison*,
  415 U.S. 361 (1974)................................................................. 5, 10, 22

*Leachco, Inc. v. CPSC*,
  103 F.4th 748 (10th Cir. 2024) ...................................................... 19-20

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  606 U.S. 146 (2025)..............................................................................9

*McNary v. Haitian Refugee Ctr., Inc.*,
  498 U.S. 479 (1991)......................................................... 2, 6-8, 12, 16

*Ridder v. Off. of Thrift Supervision*,
  146 F.3d 1035 (D.C. Cir. 1998).................................................... 10-11

*Rosewell v. LaSalle Nat'l Bank*,
  450 U.S. 503 (1981)........................................................................... 11

*Seila L. LLC v. CFPB*,
  591 U.S. 197 (2020)....................................................................... 4, 20

*Shalala v. Ill. Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000).............................................................. 2, 7-8, 12, 16

*Sinclair v. Hawke*,
  314 F.3d 934 (8th Cir. 2003)............................................................. 11

*Smith v. Bd. of Governors of Fed. Rsrv. Sys.*,
  73 F.4th 815 (10th Cir. 2023) ........................................................... 14

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*SpaceX v. NLRB*,
— F.4th —, 2025 WL 2396748 (5th Cir. 2025) .................................... 21

*Steffel v. Thompson*,
415 U.S. 452 (1974) .............................................................................. 23

*Surefoot LC v. Sure Foot Corp.*,
531 F.3d 1236 (10th Cir. 2008) ........................................................... 24

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ................................................................ 7-9, 12, 17

*United States v. Clintwood Elkhorn Min. Co.*,
553 U.S. 1 (2008) .................................................................................. 11

*United States v. Spiegel*,
995 F.2d 138 (9th Cir. 1993) ............................................................... 10

*Webster v. Doe*,
486 U.S. 592 (1988) ................................................................. 5, 10, 12

*Zummer v. Sallet*,
37 F.4th 996 (5th Cir. 2022) ............................................................... 12

*Zwickler v. Koota*,
389 U.S. 241 (1967) .............................................................................. 23

## CONSTITUTIONAL PROVISIONS & STATUTES

28 U.S.C. § 1331 .................................................................................... 16

28 U.S.C. § 1346 .................................................................................... 16

Congressional Review Act
5 U.S.C. § 805 ........................................................................................ 4

Declaratory Judgment Act, ch. 512, 48 Stat. 955 (1934) ........................ 22

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Federal Deposit Insurance Act of 1950
   12 U.S.C. § 1818................................................2-6, 11-13, 18-19, 22-24

U.S. CONST.
   amend. VII ....................................................................................22, 24
   art. II ..................................................................................................19
   art. III..........................................................................................21-22, 24

### OTHER AUTHORITIES

Press Release, Office of Public Affairs, U.S. Dep't of Justice,
   Statement from Justice Department Chief of Staff Chad Mizelle,
   (Feb. 20, 2025), https://www.justice.gov/opa/pr/statement-justice-
   department-chief-staff-chad-mizelle ..................................................20

## INTRODUCTION

CBW's opening brief made three key points showing that the district court erred in dismissing this action. The FDIC's brief fails to rebut any of them and instead tries to mischaracterize CBW's arguments and the settled legal principles from the Supreme Court and this Court on which CBW relies.

*First*, Supreme Court and Tenth Circuit precedent require a clear statement by Congress to construe a statutory restriction on jurisdiction to foreclose meaningful review of a constitutional claim. This Court carefully analyzed and applied this "clear-statement requirement" in *Citizens for Constitutional Integrity v. United States*, 57 F.4th 750, 758 (10th Cir. 2023). There, as here, the jurisdictional bar did "not include any explicit language barring judicial review of constitutional claims," so the Court inferred that "Congress did not intend to bar such review." *Id.* at 759 (citations omitted).

The FDIC has no answer to this settled principle of statutory interpretation or the district court's failure to follow it. Instead, the FDIC brushes off this Court's decision in *Citizens for Constitutional Integrity* in a footnote. FDIC Br. 31 n.14. But that case constitutes binding Circuit

1

precedent on the proper framework for this appeal. And under that framework, Section 1818(i) comes nowhere close to the clarity needed to foreclose meaningful judicial review of CBW's constitutional claims.

*Second*, Supreme Court precedent instructs that CBW cannot receive meaningful judicial review unless this litigation proceeds. If CBW had to wait until the agency proceeding is over, as the FDIC contends, judicial review "would come too late to be meaningful." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). CBW will "lose [its] rights not to undergo the complained-of agency proceedings" unless it can vindicate those rights at this juncture. *Id.* at 192.

The FDIC's response is essentially "too bad." In its view, the loss of meaningful review that concerned the Supreme Court in *Axon* is irrelevant here because the statute expressly restricts judicial review in some circumstances. But the FDIC is wrong to impose that limit on *Axon*. The Supreme Court has frequently considered whether claims could get meaningful review when considering how to interpret various statutes' express jurisdictional bars. *See, e.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19-24 (2000); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221,

2

229-30 (2020).  In combination, CBW's first two points—the presumption against denial of meaningful judicial review and Supreme Court authority recognizing that the district court's decision denies meaningful judicial review—show that the district court committed reversible error in dismissing this action.

*Third*, even if the two preceding points were set to the side, Section 1818(i) still could not be read to require dismissal of the *entire* action as the district court believed.  Among other things, CBW requests declaratory relief sufficient to ensure that the FDIC proceedings are conducted by an ALJ properly accountable to the Executive.  *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010).  The FDIC offers no argument that such relief would "affect . . . the issuance or enforcement of [a] notice or order under [12 U.S.C. § 1818]."  12 U.S.C. § 1818(i)(1).

Instead, the FDIC tries to change the subject.  It dismisses this declaratory relief as "unnecessary" and "ineffective."  FDIC Br. 46.  Wrong again.  Under Supreme Court precedent, CBW is "entitled" to this relief if it can prove its removal-protection claim because, if nothing else, such relief ensures that the President is held accountable for the agency's actions.  *Free Enter. Fund*, 561 U.S. at 513.  And the Supreme Court has

3

repeatedly afforded comparable relief by declaring that statutory re-

moval restrictions were unconstitutional—even when, as here, the gov-

ernment agreed they were unconstitutional. *See, e.g.*, *Seila L. LLC v.*

*CFPB*, 591 U.S. 197, 209, 213 (2020); *Collins v. Yellen*, 594 U.S. 220, 236-

37, 250 (2021). The FDIC has no argument that a similar ruling in this

case would violate Section 1818(i)'s terms. It does not matter whether

CBW's requested relief is sufficiently important in the FDIC's eyes.

## ARGUMENT

### I.    The FDIC's arguments contravene binding precedent on the preclusion of constitutional claims.

CBW's opening brief highlighted the "clear-statement requirement"

that this Court and the Supreme Court recognize before construing a ju-

risdictional limitation to preclude meaningful review of a constitutional

claim. *Citizens for Const. Integrity*, 57 F.4th at 758; *see* CBW Br. 22-23.

In *Citizens for Constitutional Integrity*, this Court considered a statutory

provision that, when "read literally, deprive[d] this court of jurisdiction."

57 F.4th at 757. The provision stated broadly that "[n]o determination,

finding, action, or omission under this chapter shall be subject to judicial

review." *Id.* (quoting 5 U.S.C. § 805). Even so, the Court found jurisdic-

tion to consider the plaintiffs' constitutional claims. Because the statute

4

did "not include any explicit language barring judicial review of constitutional claims," the Court "presume[d] that Congress did not intend to bar such review." *Id.* at 759 (citation omitted).

This Court traced this clear-statement requirement to a long line of Supreme Court cases holding that a general bar on judicial review "does not preclude the courts from entertaining constitutional challenges." *Id.* at 758-59 (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *INS v. St. Cyr*, 533 U.S. 289, 314 (2001); *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 678-81 & n.12 (1986); *Johnson v. Robison*, 415 U.S. 361, 365-74 & n.5 (1974); and *Webster v. Doe*, 486 U.S. 592, 599-605 (1988)). Because the clear-statement rule recognized in *Citizens for Constitutional Integrity* also governs this case, Section 1818(i) does not preclude CBW's constitutional claims. Like the statute there, Section 1818(i) has no "explicit language barring judicial review of constitutional claims" even though it establishes a "general bar" on judicial review. *Citizens for Const. Integrity*, 57 F.4th at 758-59 (citation omitted). The FDIC does not argue otherwise.

Instead, the FDIC maintains that the clear-statement requirement does not apply. According to the FDIC, the requirement does not apply

because Section 1818(i) results not in a "complete denial of review" but "a mere channeling of review to a particular court." FDIC Br. 30; *see also* FDIC Br. 31 n.14 (dismissing *Citizens for Constitutional Integrity* as "unavailing" on this ground). In other words, the FDIC argues, CBW can have its day in court by raising its constitutional challenges *after* the end of the agency process, in an appeal from a final FDIC order.

The main problem with the FDIC's argument is that it mischaracterizes the line that the Supreme Court has drawn. Numerous Supreme Court cases distinguish the "mere channeling" of review not only from the "complete denial" of review, as the FDIC suggests, but also from the *practical* denial of review or the denial of *meaningful* review. The Supreme Court made this clear in *McNary*. There, a statute gave alien applicants for Special Agricultural Worker status an opportunity for judicial review of the denial of their application, but only after a deportation order. 498 U.S. at 486. The Court held that the jurisdiction-stripping provision did not extend to plaintiffs' constitutional claims because, unless they could pursue those claims in district court, they "would not as a practical matter be able to obtain meaningful judicial review of their application denials or of their objections to [the agency's] procedures." *Id.*

at 496. Applying its precedent in *Bowen*, the Court found it "most unlikely that Congress intended to foreclose all forms of meaningful judicial review." *Id.*

The FDIC's lone response to *McNary* is to try to distinguish it on factual grounds, based on what the FDIC characterizes as "the plight of the plaintiffs" in that case. FDIC Br. 29-30. This response ignores the legal principle that *McNary* applied: courts presume that a statute does not foreclose meaningful judicial review of constitutional claims unless it clearly says so. The Supreme Court has repeatedly cited *McNary* for that proposition—in immigration and non-immigration contexts alike. *See, e.g.*, *Guerrero-Lasprilla*, 589 U.S. at 229; *Shalala*, 529 U.S. at 19-20; *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 213 (1994).

In *Shalala*, for example, the Court cited *McNary* to distinguish the mere "channeling" of a claim through the administrative process, in accordance with ripeness and administrative-exhaustion principles, from the denial of "all *meaningful* judicial review" or the "*practical equivalent* of a total denial of judicial review." 529 U.S. at 19-20 (emphases added) (citations omitted); *see also Bartlett Mem'l Med. Ctr., Inc. v. Thompson*, 347 F.3d 828, 844 (10th Cir. 2003) (exercising jurisdiction pursuant to

7

*Shalala* where plaintiffs otherwise would have "effectively received 'no review at all'"); *Cordoba v. Massanari*, 256 F.3d 1044, 1049 (10th Cir. 2001) (exercising jurisdiction pursuant to *Shalala* where plaintiffs had "no apparent right under the regulatory scheme" to challenge that scheme in the administrative proceeding).

*Thunder Basin* draws the same distinction. The statute there operated as a mere "channeling" provision, but that was because the plaintiff's constitutional claims could be "meaningfully addressed" through the statutory review procedures. 510 U.S. at 215-16. The Court distinguished *McNary* because a lack of district court jurisdiction in that case would have prevented "meaningful judicial review" as "a practical matter." *Id.* at 213 (quoting *McNary*, 498 U.S. at 496). The Court repeated this distinction in *Elgin v. Department of the Treasury*, 567 U.S. 1 (2012). It stated that the Court's clear-statement requirement does not apply when Congress "simply channel[ed] judicial review of a constitutional claim to a particular court" in which that claim could be "meaningfully addressed." *Id.* at 9 (quoting *Thunder Basin*, 510 U.S. at 215).

The FDIC tries to rewrite *Elgin* by suggesting that the Court's decision not to demand a clear statement was unrelated to the possibility

of "meaningful review."  FDIC Br. 31-32.  That is an unpersuasive read-

ing of the Supreme Court's decision.  The Court made both points to-

gether in explaining why a clear statement was not required:  the statute

channeled review to the Federal Circuit, and the Federal Circuit was

"fully capable of providing meaningful review of petitioners' claims."  *El-*

*gin*, 567 U.S. at 10.  If those claims could not be "meaningfully addressed"

in that court, a "serious constitutional question" would arise.  *Id.* at 9

(quoting *Thunder Basin*, 510 U.S. at 215).[1]

    This long line of Supreme Court and Tenth Circuit cases recognizes

that Congress would not deny meaningful review of constitutional claims

without using very clear language.  It is far from obvious that the Con-

stitution would permit Congress to enact statutes preventing courts from

providing relief necessary to avoid or repair a violation of constitutional

---

[1]  Even beyond the context of constitutional claims, the Supreme Court
recently rejected efforts to narrow the presumption of judicial review
to circumstances in which "a statute would preclude *all* judicial re-
view."  *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606
U.S. 146, 156 n.4 (2025).  The FDIC claims that *McLaughlin* "recog-
nized that *Thunder Basin*-type channeling provisions overcame that
presumption" of judicial review.  FDIC Br. 32.  But the FDIC again
disregards the Supreme Court's reasoning.  It placed great weight on
"whether the claims [could] be afforded meaningful review," *Thunder
Basin*, 510 U.S. at 207, and concluded that those claims indeed could
"be meaningfully addressed in the Court of Appeals," *id.* at 215.

9

rights. *See, e.g.*, *Webster*, 486 U.S. at 603; *Bowen*, 476 U.S. at 681 n.12; *Johnson*, 415 U.S. at 366. Rather than put Congress on a collision course with that unresolved constitutional question, courts must exercise jurisdiction to afford meaningful review of constitutional claims unless a jurisdiction-limiting provision specifically says otherwise. *See Citizens for Const. Integrity*, 57 F.4th at 758.

Despite this well-established principle of statutory interpretation, the FDIC's brief leads off by citing assorted appellate rulings that provide no guidance for this case. The FDIC highlights decisions that addressed nonconstitutional claims,[2] addressed claims for which meaningful review was possible through alternative procedures,[3] and/or resolved the dispute

---

[2] *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991); *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 510 (10th Cir. 1994); *Bd. of Governors of Fed. Rsrv. Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 997, 999 (5th Cir. 1994); *Greenberg v. Comptroller of the Currency*, 938 F.2d 8, 11-12 (2d Cir. 1991).

[3] *MCorp Fin., Inc.*, 502 U.S. at 43-44; *Henry*, 43 F.3d at 514; *Bank of La. v. FDIC*, 919 F.3d 916, 928 (5th Cir. 2019); *Ridder v. Off. of Thrift Supervision*, 146 F.3d 1035, 1041 (D.C. Cir. 1998); *Hindes v. FDIC*, 137 F.3d 148, 161, 165 (3d Cir. 1998); *United States v. Spiegel*, 995 F.2d 138, 141 (9th Cir. 1993); *Greenberg*, 938 F.2d at 12; *Abercrombie v. Off. of Comptroller of Currency*, 833 F.2d 672, 677 (7th Cir. 1987).

10

on entirely different grounds.[4]  These inapposite cases do not help answer whether Section 1818(i) bars CBW's only hope for meaningful judicial review of its constitutional claim.

Similarly off point are the tax-collection cases that the FDIC highlights.  FDIC Br. 33-35.  Those cases did not implicate the denial of meaningful review for constitutional claims.  *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 12 (2008) (finding that the prescribed procedures were not "excessively burdensome"); *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981) (finding that state procedures provided "a plain, speedy and efficient remedy"); *Hill v. Kemp*, 478 F.3d 1236, 1253-54 (10th Cir. 2007) (same).

In a notice of supplemental authority, the FDIC highlights *Burgess v. Whang*, — F.4th —, 2025 WL 2437490 (5th Cir. 2025), *pet. for reh'g en banc filed* (Oct. 9, 2025).  That decision mainly relied on the panel's reading of Fifth Circuit precedent, especially *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), and a later en banc decision applying it.  *Id.* at *4-6.  The *Burgess* court declined to follow other Fifth Circuit cases that,

---

[4] *Sinclair v. Hawke*, 314 F.3d 934, 942 (8th Cir. 2003) (finding that *Bivens* claims were unavailable); *Ridder*, 146 F.3d at 1041 (rejecting the constitutional claim).

as the court admitted, "implied that § 1818 does *not* preclude jurisdiction for constitutional claims." *Id.* at \*9-10 (emphasis added) (citing *FDIC v. Bank of Coushatta*, 930 F.2d 1122, 1126 (5th Cir. 1991); and *Collins v. Dep't of the Treasury*, 83 F.4th 970, 980 (5th Cir. 2023)).  The *Burgess* opinion shows that the Fifth Circuit's case law is deeply muddled, and perhaps only the en banc Fifth Circuit can clarify it.  But this Court's case law is not muddled.  This Court has consistently applied the strong presumption in favor of meaningful review of constitutional claims.

*Burgess* also conflicts with the Supreme Court's cases.  The *Burgess* court never acknowledged the Supreme Court's concern with ensuring meaningful review of constitutional claims.  It did not even cite *McNary* or *McNary*'s subsequent application in *Shalala* and *Guerrero-Lasprilla*.[5] Nor did it appreciate the significance of the Supreme Court's conclusions in *Elgin* and *Thunder Basin* that channeling the claims in those cases to

---

[5]  The *Burgess* court did discuss the Fifth Circuit's decision not to apply *Webster* in a security-clearance case, *Zummer v. Sallet*, 37 F.4th 996 (5th Cir. 2022).  But *Zummer* applied the three *Thunder Basin* factors and concluded that two of the three were strong enough to overcome the lack of meaningful review.  *Id.* at 1008.  *Zummer* also thought that *exercising* judicial review over the security-clearance issues would raise its own constitutional doubts, making *Webster*'s constitutional-avoidance rationale inapplicable.  *Id.* at 1011-12.

12

post-agency judicial review did not impair their ability to be "meaning-fully addressed." 2025 WL 2437490 at \*8 n.8 (quoting *Elgin*, 567 U.S. at 9). Curiously, the *Burgess* court seems to have relied on outdated Fifth Circuit authority to conclude that the *Burgess* plaintiff "can seek mean-ingful review of his constitutional claims in the courts of appeals" after the conclusion of the FDIC proceedings. *Id.* at \*9; *see also id.* at \*5 n.4. But as discussed next, that conclusion flatly contradicts *Axon*. This Court should not be led astray by out-of-Circuit authority that violates Supreme Court precedent.

## II. The FDIC's arguments contravene binding precedent on whether delayed judicial review of these claims would be meaningful review.

The previous section explained that under Supreme Court and Tenth Circuit precedent, the pivotal question on appeal is whether the district court's construction of Section 1818(i) would deny CBW meaning-ful review of its constitutional claims. The answer to that question is an easy yes. The Supreme Court held just a couple years ago that constitu-tional challenges to the structure of administrative adjudications "cannot receive meaningful judicial review" if review must await an adverse final order at the end of the agency's proceedings. *Axon*, 598 U.S. at 195.

13

The Supreme Court was clear. Once the agency proceedings are over, a court of appeals "can do nothing" to redress a claim that the plaintiff was subject to an illegitimate administrative proceeding before an illegitimate decisionmaker because "[a] proceeding that has already happened cannot be undone." *Id.* at 191. Judicial review "would come too late to be meaningful." *Id.* And thus would-be plaintiffs "lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.* at 192.

Despite *Axon*'s clear holding, the FDIC claims "CBW can obtain 'meaningful' review at the close of the FDIC's administrative process." FDIC Br. 29. The FDIC says that "courts regularly review constitutional issues on appeal after agency proceedings are complete." FDIC Br. 28; *see also* FDIC Br. 35-36. And it cites this Court's decision in *Smith v. Board of Governors of Federal Reserve System*, 73 F.4th 815 (10th Cir. 2023), and the Fifth Circuit's decision in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd*, 603 U.S. 109 (2024), which involved efforts to vacate final agency orders on constitutional grounds.

*Axon* refutes these very arguments. It recognized that courts of appeals *often* can meaningfully address constitutional claims. 598 U.S. at

14

190. And it recognized that a court of appeals can "vacate the [agency's] order" after the end of the agency's proceedings. *Id.* at 191. But a "separation-of-powers claim is not about that order." *Id.* Such a claim is about not being subject to the agency's unconstitutional proceedings in the first place. *Id.* For judicial review of *that* claim to be "meaningful," it must take place before the agency's proceeding "has already happened." *Id.* CBW's claims fall within this category. *See* CBW Br. 26-29. Indeed, one of CBW's claims is the exact same challenge to ALJs' removal protections that *Axon* ruled could not be meaningfully reviewed after the agency proceeding is over. *See* 598 U.S. at 182-83, 188. And CBW's other claim also contests the constitutional legitimacy of the agency's proceedings, not just the possibility of an adverse order at the end of those proceedings. *See* CBW Br. 28-29.

Because the FDIC's position is incompatible with *Axon*, the FDIC tries to make *Axon* irrelevant. It argues that *Axon*'s discussion of whether later judicial review would be meaningful does not matter if Congress expressly limits courts' jurisdiction. FDIC Br. 22-27. That argument fails for reasons identified in the previous section. The Supreme Court has repeatedly considered the availability of meaningful judicial

15

review when deciding the scope of explicit jurisdictional limitations. *See McNary*, 498 U.S. at 486 n.6, 496 (interpreting provision stating that "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection" (citation omitted)); *Shalala*, 529 U.S. at 10, 19-20 (interpreting provision stating that "[n]o action . . . shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." (citation omitted)); *Guerrero-Lasprilla*, 589 U.S. at 227, 229-30 (interpreting provision limiting judicial review to "constitutional claims or questions of law" (citation omitted)). The FDIC's attempt to make the availability of meaningful review irrelevant to explicit jurisdictional limitations disregards all these cases.[6]

---

[6] The FDIC invokes *Bohon v. FERC*, 92 F.4th 1121 (D.C. Cir. 2024), but it is not remotely on point. In that case, plaintiffs sought to challenge an agency decision *after* it was issued and *after* the court of appeals had already rejected other litigants' challenges to it. *Id.* at 1121-22. The plaintiffs clearly could have obtained meaningful judicial review through the available procedures, but unlike the other litigants did not try to do so; they instead tried to misuse *Axon* to get a second bite at the apple. The FDIC's reliance on *Azimov v. U.S. Department of Homeland Security*, No. 22-56034, 2024 WL 687442 (9th Cir. Feb. 20, 2024), is likewise misplaced. As far as the Ninth Circuit's terse discussion indicates, the plaintiffs there did not assert constitutional claims, let alone ones that were not otherwise subject to meaningful judicial review.

The FDIC relies heavily on Justice Gorsuch's solo concurrence in *Axon*, which expressed dissatisfaction with the perceived unpredictability of the three-factor *Thunder Basin* test.  598 U.S. at 206-07.  As the foregoing discussion shows, however, the Supreme Court has long considered the meaningfulness of judicial review, even before *Thunder Basin*.  Those Supreme Court decisions provide the governing legal framework.

And contrary to the FDIC's reading, nothing in the *Axon* majority opinion suggests its analysis of meaningful review is irrelevant to other statutes.  To be sure, interpreting different statutory provisions may require different analyses in different scenarios.  Sometimes, the full three-factor *Thunder Basin* analysis may not directly apply.  But when constitutional rights are at stake, courts must at least ask whether the government's interpretation of the jurisdictional limitation would deny meaningful judicial review.  And for claims like CBW's, *Axon* dictates that the review proposed by the FDIC would not be meaningful.

\*     \*     \*

The FDIC's brief fails to answer CBW's straightforward argument for reversal.  When the government, like the FDIC here, tries to construe

17

a statute to foreclose meaningful judicial review of constitutional claims, the Court will not accept that construction unless the statute has "explicit language barring judicial review of [those] constitutional claims." *Citizens for Const. Integrity*, 57 F.4th at 759. Section 1818(i) has no such language, so the district court was wrong to interpret that provision as denying CBW a meaningful day in court.

## III. Even under the FDIC's preferred test for preclusion, at least part of CBW's complaint should proceed.

Given the interpretive principles discussed above, the Court should reverse the judgment of dismissal and send the case back for the district court to exercise jurisdiction over CBW's claims to the extent necessary to provide meaningful judicial review in accordance with *Axon*. But even if the Court declines to apply those interpretive principles and reads the bare text of Section 1818(i) in a vacuum, the Court should at a minimum reverse in part and remand because some of CBW's case falls outside the jurisdictional limitation under any possible reading.

CBW has explained how the district court improperly ruled as though Section 1818(i) prohibited courts from taking any action to affect FDIC *proceedings*. CBW Br. 37. The language is narrower. It bars courts from exercising jurisdiction to affect issuance or enforcement of a notice

18

or order under Section 1818. 12 U.S.C. § 1818(i)(1). The FDIC's principal linguistic argument is that it would affect the issuance of an order (or enforcement of a notice) to block the FDIC from issuing such an order through a prohibitory injunction backed by the court's contempt power. FDIC Br. 37-42. But even if the FDIC is right on that point about injunctions, the FDIC cannot show that the declaratory relief requested in the complaint would affect the issuance or enforcement of an FDIC notice or order under Section 1818.

The FDIC's inability to make that showing is most clearly apparent for CBW's removal-protection claim. Declaring that ALJs' multilayered removal protections conflict with Article II need not produce any effect on the FDIC's issuance or enforcement of its notices or orders. As this Court has explained, an unconstitutional statutory provision shielding agency decisionmakers from removal does not entitle a litigant to retrospective relief against a prior decision by that decisionmaker unless the litigant can make a detailed factual showing. *Leachco, Inc. v. CPSC*, 103 F.4th 748, 756-57 (10th Cir. 2024). Without such a showing, unconstitutional removal protections do not invalidate or otherwise impair the enforceability of an agency order. *See id.* at 756. Nor does the removal

19

protection "strip the protected official of the power to undertake the other responsibilities of his office." *Id.* at 757 (citation and brackets omitted). Indeed, the Department of Justice's concession that "multiple layers of removal restrictions shielding administrative law judges (ALJs) are unconstitutional," Press Release, Office of Public Affairs, U.S. Dep't of Justice, Statement from Justice Department Chief of Staff Chad Mizelle, (Feb. 20, 2025), https://www.justice.gov/opa/pr/statement-justice-department-chief-staff-chad-mizelle, has not deterred the FDIC from continuing its enforcement efforts in this case.

The FDIC never tries to explain how declaratory relief on CBW's removal-protection claim would affect the issuance or enforcement of an FDIC notice or order. The FDIC does not make that argument. Instead, it claims that "such a declaration is unnecessary as to the FDIC, which already takes the position that the ALJ is removable." FDIC Br. 46.

The FDIC cites no authority for that claim, nor could it. The Supreme Court has repeatedly declared removal restrictions unconstitutional at the request of private litigants—even when the federal government agreed with those private litigants. *See, e.g.*, *Seila L.*, 591 U.S. at 209, 213; *Collins*, 594 U.S. at 236-37, 250. As another circuit recently

20

explained when addressing the current administration's new stance on ALJs' removal protections, "the change in Executive policy does not alter the reality that the . . . ALJ protections are still on the books." *SpaceX v. NLRB*, — F.4th —, 2025 WL 2396748, at \*2 n.5 (5th Cir. 2025). Only an Article III court can definitively resolve whether such statutory provisions are nullified by the higher law established by the Constitution. *See id.*

The FDIC argues in response that the district court cannot conclusively adjudicate the ALJ's rights. FDIC Br. 47. But even if that is true, the court can conclusively adjudicate *CBW*'s right not to undergo an unconstitutionally structured proceeding. That is all that is required.

The FDIC implies that such relief would be pointless. But CBW has requested it, and the Supreme Court has recognized its importance. Even when a prevailing party on a removal-protection claim is "not entitled to broad injunctive relief against [an agency's] continued operations," it is "entitled to declaratory relief sufficient to ensure that the [legal] requirements . . . to which [it is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513. If CBW proves its claim, it is entitled to no less relief.

21

Likewise, granting declaratory relief on CBW's Seventh Amendment and Article III claim would not be an exercise of "jurisdiction to affect . . . the issuance or enforcement of [an FDIC] notice or order." 12 U.S.C. § 1818(i)(1). If a hypothetical future penalty against CBW is unenforceable, it is because of the Constitution, not because of any declaratory relief that the district court might offer here. And for reasons the Supreme Court has recognized, CBW can challenge Congress's decision to authorize a juryless, administrative imposition of certain remedies without challenging the FDIC's decision to impose such remedies in a particular case. *See Johnson*, 415 U.S. at 367 ("Appellee's constitutional challenge is not to any such decision of the *Administrator*, but rather to a decision of *Congress* to create a statutory class entitled to benefits that does not include [certain] conscientious objectors[.]"); CBW Br. 38.

The FDIC argues that such declaratory relief "would be indistinguishable from an injunction, as its only conceivable purpose would be to stop the proceeding." FDIC Br. 49. But here too, the FDIC's argument ignores longstanding Supreme Court precedent.

The Supreme Court has explained that the very point of the federal "Declaratory Judgment Act was to provide a milder alternative to the

injunction remedy." *Steffel v. Thompson*, 415 U.S. 452, 467 (1974) (citation omitted).  That purpose is particularly important "in cases where an injunction would be inappropriate."  *Id.* at 471.  "The only occasions where [the Supreme] Court has . . . found that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications."  *Id.* at 472 (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943)).  It is no coincidence that the FDIC relies on these very federalism-implicating cases on collection of state taxes, including *Great Lakes Dredge* and its progeny, in asking this Court to disregard the differences between declaratory and injunctive relief.  *See* FDIC Br. 42-43.  But in other contexts, "a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction."  *Zwickler v. Koota*, 389 U.S. 241, 254 (1967).  The district court failed to do so here.[7]

---

[7] The Fifth Circuit's *Burgess* decision is unpersuasive because it too failed to independently analyze how the plaintiff's request for declaratory relief could implicate Section 1818(i)'s terms.  *See Burgess*, 2025 WL 2437490, at *2 (identifying the complaint's claims for declaratory relief, which the Fifth Circuit's opinion never addressed again).

23

To be sure, if the district court ultimately declares that FDIC proceedings transgress the Seventh Amendment and Article III, the FDIC might decide not to go further with them. But that is a feature, not a bug, of declaratory relief. As this Court has observed, "[o]ne of the highest offices of declaratory procedure is to remove uncertainty and insecurity from legal relations, and thus clarify, quiet and stabilize them before irretrievable acts have been undertaken." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1242 n.2 (10th Cir. 2008) (citation omitted). In any event, a decision by the FDIC to halt its proceedings once the Constitution's limits are made clear would be its choice. It would not be the result of the district court's exercise of "jurisdiction to affect by injunction or otherwise the issuance or enforcement of [an FDIC] notice or order." 12 U.S.C. § 1818(i)(1). For this reason, too, the district court's dismissal of CBW's claims was in error.

## CONCLUSION

For all these reasons, the Court should reverse the judgment of the district court and remand the case for further proceedings.

Dated: October 9, 2025

ANTHONY J. DURONE
CARSON M. HINDERKS
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
(816) 561-7007

Respectfully submitted,

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
ALLEN H. DENSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

DANIEL B. TEHRANI
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6150

*Counsel for CBW Bank*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,024 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.


Dated:  October 9, 2025  s/ Michael E. Kenneally
          MICHAEL E. KENNEALLY